Traci L. Van Pelt, Wyo. Bar #6-4330
Michael T. McConnell, Wyo. Bar #5-2942
Jared C. Lockwood, *Pro Hac Vice*
McConnell Fleischner Houghtaling &
Craigmile, LLC
4700 S. Syracuse Street, Suite 200
Denver, CO  80237
(303) 480-0400 - Phone
(303) 458-9520 – Facsimile
tvanpelt@mfhc.com
mmcconnell@mfhc.com
jlockwood@mfhc.com

Attorneys for Defendant Secore & Waller, LLP

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| NAOMI L. MILES REVOCABLE TRUST, | ) | |
| NAOMI L. MILES, TRUSTEE, and | ) | |
| CHARLES W. MILES, JR. TRUST, | ) | |
| NAOMI L. MILES, TRUSTEE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. No. 2:10-cv-00034-WFD |
| | ) | |
| DENNIS R. LAWRENCE, et al. | | |

---

## DEFENDANT SECORE & WALLER, LLP'S
## MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO  FED. R. CIV. P. 12(b)(6)

---

# TABLE OF CONTENTS

I.   INTRODUCTION..................................................................................1

II.  STATEMENT OF THE CASE.................................................................2

III. STATEMENT OF UNDISPUTED FACTS.................................................5

IV.  LEGAL ARGUMENT.............................................................................6

    A.   Fed.R.Civ.P. 12(b)(6) Standards................................................7

    B.   Overview of Federal Securities Law..........................................8

    C.   Plaintiffs' Claims Against Secore & Waller Under 15 U.S.C. §78j(b) and 17 C.F.R. §240.10b-5 Must Be Dismissed.................................................9

        a.   Secore & Waller Cannot Be Liable Under 15 U.S.C. §78j(b) and 17 C.F.R. §240.10b-5 for Merely Assisting in the Drafting of the Private Placement Memoranda...........................................................12

        b.   Plaintiffs Have Failed to Plead Scienter Against Secore & Waller.......14

        c.   Plaintiffs Have Not Alleged Reliance on the PPMs.........................17

        d.   Plaintiffs Cannot Establish Loss of Causation Against Secore & Waller...............................................................18

    D.   Plaintiffs' Fifth Claim For Relief Against Secore & Waller for Violation of the Wyoming Securities Act, WS §17-4-122(a), Must Be Dismissed..........19

        a.   Plaintiffs' Wyoming Securities Act Claim Regarding SR-4 is Barred by the Applicable Statute of Limitations..........................................21

    E.   Plaintiffs' Eighth Claim For Relief Against "Defendants" (Assumingly Including Secore & Waller) for Fraud Must Be Dismissed.....................21

        a.   Plaintiffs Failed to Plead Fraud With Particularity...........................22

        b.   Plaintiffs Have Alleged Fraud Generally Against All Defendants in Violation of PSLRA Requirements...............................................23

    F.   Plaintiffs' Tenth Claim For Relief Against "Defendants" (Assumingly Including Secore & Waller) for Negligence Must Be Dismissed...........23

V.   CONCLUSION....................................................................................25

i

# TABLE OF AUTHORITIES

## Cases

15 U.S.C. §78j .........................................................................................................................11, 12

*Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir.2007)..............................................3, 12

*Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1949-50 , 173 L.Ed.2d 868 (2009) ..............................8, 18

*Bauchman v. West High Sch.*, 132 F.3d 542, 550 (10th Cir. 1997) ....................................................8

*Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)..........8, 9, 10, 18

*Birt v. Wells Fargo Home Mortgage, Inc.* 75 P.3d 640, 656 (Wyo. 2003).................................26, 28

*Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 749, 95 S. Ct. 1917, 44 L.Ed.2d 539 (1975).......................6

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir.1997).............................................4

*Brooks v. Zebre*, 792 P.2d 196,202 (Wyo. 1990) ....................................................................26

*Bruschi v. Brown*, 876 F.2d 1526, 1530 (11th Cir. 1989)...........................................................23, 24

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177, 114 S.Ct. 1439, 128
    L.Ed.2d 119 (1994)......................................................................................................12, 13

*City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1258 (10th Cir. 2001)................................................10, 20

*County of Santa Fe, N.M. v. Public Service Co. of New Mexico*, 311 F.3d 1031, 1035 (10th Cir.2002) ......................3

*Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341-342, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)..........13, 19

*Durgin v. Mon*, 659 F. Supp. 2d 1240, 1255, (S.D. Fla. 2009)..................................................20, 21

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 n. 12, 96 S. Ct. 1375, 47 L. Ed. 2d 668 (1976) ......................19, 21

*Farlow v. Peat, Marwick, Mitchell & Co.*, 950 F.2d 982, 986 (10th Cir. 1992)....................................13, 27

*GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir.1997)................................4

*Greebel v. FTP Software, Inc.*, 194 F.3d 185, 195-96 (1st Cir. 1999)......................................................10

*Halliburton Co. v. Claypoole*, 868 P.2d 252, 256 (Wyo.1994) .............................................................26

*Helwig v. Vencor, Inc.*, 251 F.3d 540, 551 (6th Cir. 2001) (*en banc*) ...................................................10

*Herman & MacLean v. Huddleston*, 459 U.S. 375, 103 S. Ct. 683, 74 L. Ed. 2d 548 (1983)..................11, 12, 19, 23

*Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565-66 (2d Cir.2006)....................................................3

*Huddleson v. Herman & MacLean*, 640 F.2d 534, 549 (5th Cir. 1981) .................................................23

*In re Estate of Drwenski*, 83 P.3d 457, 461 (Wyo. 2004).................................................................29, 30

*In re Kendall Square Research Corporation Securities Litigation*, 868 F. Supp. 26, 28 (D.Mass.1994)....................14

*In re MTC Electronic Technologies Shareholders Litigation*, 898 F. Supp. at 987) .................................................14

*In re Navarre Corp. Sec. Litig.*, 299 F.3d 735, 741 (8th Cir. 2002) ......................................................10

*In re Refco, Inc. Sec. Litig.*, 609 F.Supp.2d 304 (S.D.N.Y. 2009)........................................................16

*In re Stac Electronics Securities Litigation*, 89 F.3d 1399, 1405 n. 4 (9th Cir.1996)......................................3

*Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1236 (10th Cir.2000)......................................................27

*Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 827 (8th Cir. 2003).....................................................10

*Lavoie v. Safecare Health Service, Inc.*, 840 P.2d 239, 252 (Wyo.1992).................................................26

*Leipham v. Adams*, 77 Wash.App. 827, 832, 894 P.2d 576 (1995) ...................................................29

*Marchant v. Cook*, 967 P.2d 551,554 (Wyo. 1998).......................................................................26

*Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1238 (11th Cir. 2008) ...................................................19

*Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006)...............................................................8

*Moore v. Lubnau*, 855 P.2d 1245, 1248 (Wyo. 1993)....................................................................28

*Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir.2008)...................................................................3

*Pacific Inv. Management Co. LLC v. Mayer Brown, LLP*, 603 F.3d 144, 148 (2nd Cir. 2010)..........................passim

*Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)...........................................8

*Peay v. BellSouth Medical Assistance Plan*, 205 F.3d 1206 (10th Cir. 2000) ..................................................1

*Phillips v. Bell*, 265 Fed. Appx. 133, 138 (10th Cir. 2008) ...............................................................9

*Pinter v. Dahl*, 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 ..........................................................28

*Ravenswood Inv. Co., v. Bishop Capital Corp.*, 374 F. Supp. 2d 1055, 1065 (D. Wyo. 2005) ............................24, 26

*Robbins v. Oklahoma*, 519 F. 3d 1242, 1246 (10th Cir. 2008) ...........................................................9

*Schuler v. Community First National Bank*, 999 P.2d 1303, 1306 (Wyo.2000)........................................29

*Seattle-First National Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir.1986)......................................27

*SEC v. Wolfson*, 539 F.3d 1249, 1257-1259 (10th Cir. 2008) ..........................................................13, 15

*Shapiro v. Cantor*, 123 F.3d 717 (2d Cir.1997)..........................................................................13, 14, 15

*Southland Securities Corp. v. Inspire Ins. Solutions,* 365 F.3d 353, 365 (5th Cir. 2004) ..............................28

*State v. Nelson,* 49 P.3d 185, 188 (Wyo. 2002) .......................................................................................25

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta,* 552 U.S. 148, 156-157, 128 S. Ct. 761, 768, 169 L. Ed. 2d 627 (2008) ....................................................................................................................11, 12, 13, 22

*Strait v. Kennedy,* 103 Wash.App. 626, 13 P.3d ..................................................................................29

*Superintendent of Ins. of N.Y. v. Bankers Life & Casualty Co.,* 404 U.S. 6, 13, n. 9, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971) ...........................................................................................................................11

*Tal v. Hogan,* 453 F.3d 1244, 1263 (10th Cir.2006) ............................................................................27

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 321, 127 S. Ct. 2499, 2508, 168 L. Ed. 2d 179 (2007) .19, 20, 21

*Trask v. Butler*, 123 Wash.2d 835, 845, 872 P.2d 1080 (1994) .............................................................29

*Unity House, Inc. v. North Pacific Investments, Inc.*, 918 F. Supp. 1384, 1389 (D. Ct. Hawaii 1996) ......................6

*Utah Gospel Mission v. Salt Lake City Corp.,* 425 F.3d 1249, 1253-54 (10th Cir.2005) .............................................3

*Vosgerichian v. Commodore International,* 862 F. Supp. 1371, 1378 (E.D.Pa.1994) ...................................14

*Willmschen v. Meeker,* 750 P.2d 669, 672 (Wyo. 1988) ......................................................................26

*Wright v. Ernst & Young, LLP,* 152 F.3d 169, 176 (2nd Cir. 1998) ..................................................14

Wyo. Stat. Ann. §17-4-122 ..................................................................................................................25

*Ziemba v. Cascade International, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) .........................................20

## Statutes

15 U.S.C. §78j(b) .............................................................................................................................passim

15 U.S.C. §78u-4(b)(1); and (2) .............................................................................................................15

17 C.F.R. §240.10b-5 ......................................................................................................................passim

17 CFR 230.501 *et seq* .......................................................................................................................4

Private Securities Litigation Reform Act of 1995, Pub.L. No. 104-67, 109 Stat. 737 .........................8, 15, 23

Securities Exchange Act of 1934 ......................................................................................................12, 21

Wyo. Stat. Ann. §17-4-113 (a)(ix)(B) ...................................................................................................20

Wyo. Stat. Ann §17-4-122(a)(ii) ...........................................................................................................20

Wyo. Stat. Ann. §17-4-133 (a)(ix)(A) ...................................................................................................20

Wyo. Stat. Ann. 17-4-122(e) ................................................................................................................21

Wyoming Securities Act, WS §17-4-122(a) .....................................................................................19, 20

Wyoming Statute §17-4-101, *et seq.* .....................................................................................................19

## Rules

Fed. R. Civ. P. 12(b)(2) ........................................................................................................................1

Federal Rule of Civil Procedure 8(a)(2) ...............................................................................................8

Rule 9(b) ............................................................................................................................................22

Wyo. R. Civ. P. 12(b)(6) .....................................................................................................................21

## **EXHIBITS**

Exhibit 1 – Private Placement Memorandum ("PPM") for the SR-4 offering

Exhibit 2 – Private Placement Memorandum ("PPM") for the SR-12 offering

# I.   <u>INTRODUCTION</u>[1]

Plaintiffs have filed an 83-page complaint against 19 Defendants.  As against Defendant Secore & Waller, LLP ("Secore & Waller), a small Texas law firm, Plaintiffs have pled four causes of action: (1) Count 1 – Securities Fraud under 15 U.S.C. §78j(b) and 17 C.F.R. §240.10b-5; (2) Count 5 – Securities Fraud and aiding and abetting under the Wyoming Securities Act; (3) Count 8 – common law fraud; and (4) Count 10 – Common law negligence. *Complaint* ¶¶ 205-208 & 251-218.  The overwhelming majority of the allegations in Plaintiffs' Complaint do not relate in any way to Secore & Waller.

Plaintiffs are The Naomi Miles Revocable Trust, Naomi Miles, Trustee ("the Miles Trust) and the Charles W. Miles, Jr. Trust, Naomi Miles Trustee ("the Credit Trust").  The gravamen of Plaintiffs' claims against Secore & Waller is the Trusts purchase of preferred stock in two corporations, Shale Royalties 4, Inc. ("SR-4"), and Shale Royalties 12, Inc. ("SR-12").  SR-4 and SR-12 were oil and gas lease acquisition and development corporations.  Provident Royalties, LLC ("Provident"), the parent of SR-4 and SR-12, retained Secore & Waller to draft the Private Placement Memorandum ("PPM") for the SR-4 and SR-12 offerings.  Is it undisputed that Secore & Waller is not identified in the PPM.  It is undisputed that the PPM does not contain any false statements.  It is undisputed that Secore & Waller did not sell, nor offer to sell, stock in SR-4 and SR-12 to Plaintiffs (or anyone else for that matter).

Plaintiffs' claims center on the Trusts' investment advisors, Defendants Lawrence and Pope and their various investment entities.  Plaintiffs claim that Defendants Lawrence and Pope got them into risky, illiquid, bad investments, unsuitable for the two Trusts.  These include such far ranging investments as a Miami Beach hotel, to bundled promissory notes made by healthcare providers, to campaign media holdings.  Indeed, one of Plaintiffs' core allegations is their financial advisors recommended sham loans between the trusts to create the false

---

[1]      While the first procedural step in assessing any claims against Secore & Waller is the evaluation of personal jurisdiction pursuant to FED. R. CIV. P. 12(b)(2) and governing Tenth Circuit authority, *Peay v. BellSouth Medical Assistance Plan,* 205 F.3d 1206 (10th Cir. 2000), this Court has requested all substantive motions to be filed on August 25, 2010, including any motions under FED. R. CIV. P. 12(b)(6).  Under *Peay,* this Court lacks personal jurisdiction over Secore & Waller.  That issue has been fully briefed by Secore & Waller in its Motion to Dismiss under FED. R. CIV. P. 12(b)(2) for lack of personal jurisdiction (Docket # 72).   Without consenting to this Court's personal jurisdiction over Secore & Waller, and subject to its jurisdictional motions, Secore & Waller now moves to dismiss all claims against it under FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

appearance of being an accredited investor.  It is undisputed that none of these sham loans or resultant investments relate to Secure & Waller in any way.

Plaintiffs have made the tactical decision to take their relatively straightforward case against their financial advisers and tack on a mish-mash of defendants with varying alleged connections to the four groups of high-risk investments.  One of the four groups of high-risk investments is labeled in the Complaint as "Provident Royalties LLC Offerings" which are the Trusts' purchases of stock in SR-4 and SR-12.  *Complaint,* ¶¶ 40-44.  Plaintiffs allege they lost $230,000 on Provident offerings.  *Complaint*, ¶ 43.  Plaintiffs elected not to sue Provident or any of its principals or subsidiaries.  Rather, the only defendant with an alleged connection to Provident that Plaintiffs elected to sue (other than their financial advisers who sold it to them) is Secore & Waller.

Secore & Waller is located in Texas.  It is not alleged that Plaintiffs have ever been clients of Secore & Waller or that Secore & Waller had any contact of any kind with the Plaintiffs.  Secore & Waller's drafting of the PPM for SR-4 and the PPM for SR-12 are the sole bases for the claims against Secore & Waller.

Importantly, the Complaint does not allege that Mrs. Miles ever read the PPMs for either SR-4 or SR-12.  In fact, the Complaint fails to allege that Mrs. Miles ever received a PPM for SR-4.  The Complaint fails to allege she ever read the PPM for SR-12.  Secore & Waller's name does not appear anywhere in either PPM.  In fact, the Complaint alleges that Mrs. Miles first became aware that Secore & Waller drafted the PPMs well after her Trusts purchased the stock.

Further, the SR-4 and SR-12 offerings were limited to accredited investors and Plaintiffs claim it was only after a sham loan between the Trusts that one Trust, The Credit Trust, was able to buy the SR-4 and SR-12 stock.  Secore & Waller was not involved with the sham loans in any way.  In short, at the time Plaintiffs made their investments, they: (1) did not know of the PPMs and had not read them; and (2) did not know whether Secore & Waller had drafted any portion of the PPMs.  As a matter of law, Plaintiffs did not rely upon Secore & Waller in making the SR-4 and SR-12 investments.  There is no allegation against Secore & Waller upon which relief can be granted.

## II.   STATEMENT OF THE CASE

Provident and SR-4 and SR-12 hired Secore & Waller to draft PPMs for the private offerings.  Compl. ¶ 28.  The PPMs – and alleged omissions – form the sole bases for the claims

against Secore & Waller.  Plaintiffs refer to the PPM throughout their Complaint; however, they failed to attach the PPMs to the Complaint.  Under a long line of venerable Tenth Circuit authority, when a document is central to a plaintiff's claims, its authenticity is not in question, and it is referred to and quoted in the Complaint, a court may consider the document without converting a defendant's Rule 12(b)(6) motion into a motion for summary judgment. *See Alvarado v. KOB-TV, L.L.C.,* 493 F.3d 1210, 1215 (10th Cir.2007); *County of Santa Fe, N.M. v. Public Service Co. of New Mexico,* 311 F.3d 1031, 1035 (10th Cir.2002); *Utah Gospel Mission v. Salt Lake City Corp.,* 425 F.3d 1249, 1253-54 (10th Cir.2005), *quoted in Pace v. Swerdlow,* 519 F.3d 1067, 1072 (10th Cir.2008). *See also Holowecki v. Fed. Express Corp.,* 440 F.3d 558, 565-66 (2d Cir.2006) (applying same rule to consider plaintiff's filings with EEOC in deciding motion to dismiss ADEA claims as untimely), *aff'd,* 128 S.Ct. 1147 (2008).

Particularly in securities actions, courts often look to materials outside the pleadings in order to determine Rule 12(b)(6) motions. Courts routinely consider public filings at the motion to dismiss stage. *See, e.g., In re Stac Electronics Securities Litigation,* 89 F.3d 1399, 1405 n. 4 (9th Cir.1996) (district court's consideration of prospectus text, including portions not mentioned in the complaints, was appropriate at the motion to dismiss stage and did not convert the motion to one for summary judgment).  It is accepted practice that, "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss."  *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir.1997); *see also Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir.1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, ... the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment.") (Citation omitted).  "If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied."  *See GFF,* 130 F.3d at 1385.

Here, Plaintiffs claims' against Secore & Waller are based upon the PPMs for SR-4 and SR-12.  The focus of Plaintiffs' claim is the allegation that the PPMs failed to disclose that SR-4 and SR-12 did not have audited financial statements.  Compl. ¶ 123.  However, that allegation is

false and is directly contradicted by the disclosures actually made in the PPMs.  The PPMs are 25 pages long, excluding exhibits.  For both SR-4 and SR-12, the PPMs state the following:

- The corporation was recently incorporated.
- The corporation had no prior activities.
- The corporation had no significant assets.
- The corporation had no current cash flow.
- The corporation had no balance sheets.
- The corporation had **no financial information at all** for investors to review.
- The investments were "high risk" and suitable only for persons of substantial financial means who have no need for liquidity and who can afford to lose their entire investment.
- The corporation was a start-up enterprise and may have cash flow problems.
- The corporation had **no operating history** on which investors may base an evaluation of potential future performance.
- Investors should retain their own legal or financial advisors about whether to invest in the corporations.
- Information regarding the performance of prior oil and gas related investment funds managed or financed by affiliates of the corporation was provided in an exhibit (SR-12 only; SR-4 was one of the first offerings).
- Additional information could be obtained from the management of the corporation upon request.
- Approximately 86% of the proceeds of the offering, after payment of expenses, fees and commissions, would "be used to implement the Corporation's plan of business."
- While proceeds would be used primarily to acquire oil and gas properties, the proceeds could also be used to pay overhead and administrative expenses and might include the payment of intangible costs which might not result in the acquisition of an asset.

Exhibits 1 and 2, PPM for SR-4 and SR-12 at pp. i, ii, 1, 9, 18, and 23.

The PPMs stated – in bold-faced and ALL CAPS on the very first page:

**AN INVESTMENT IN THE PREFERRED STOCK INVOLVES A HIGH DEGREE OF RISK.   ONLY THOSE PERSONS WHO HAVE THE FINANCIAL ABILITY AND WILLINGNESS TO ACCEPT SUCH RISK SHOULD CONSDIER INVSETING IN THE PREFRRD STOCK.   SEE "RISK FACTORS."**

Ex. 1 and 2, PPMs at p. i.

The "Risk Factors" take up four pages of each PPM.  Ex. 1 and 2, pp. 11-15.  The investors in SR-4 and SR-12 had to be "accredited investors" as that term is defined in 17 CFR 230.501 *et seq.*  Ex. 1 and 2, PPMs at p. i.  Only the Miles Trust was an accredited investor able to purchase Shale Royalties investments.  Compl. ¶ 60.

Plaintiffs now contend that SR-4 and SR-12 were Ponzi schemes. Compl. ¶28. They contend that Secore & Waller should have disclosed that SR-4 and SR-12 did not have audited financial statements and that therefore, SR-4 and SR-12 may be Ponzi schemes. Compl. ¶ 119. These allegations are nothing more than conclusory, self-serving statements. They are woefully insufficient to state a claim under Rule 12(b)(6) and federal and state substantive law.

## III.   STATEMENT OF UNDISPUTED FACTS

Naomi Miles is the sole trustee of both the Miles Trust and the Credit Trust. *Complaint* ¶¶ 7-8. The Miles Trust satisfied the requirements of an "accredited investor", thereby enabling it to purchase the SR-4 and SR-12 stock. *Complaint* ¶ 60. The Credit Trust did not meet the requirements of an "accredited investor", thereby precluding it from purchasing SR-4 and SR-12 offerings. *Id.* There is no allegation that the Credit Trust actually purchased any stock in SR-4 or SR-12. Thus, only the Miles Trust can assert a claim against Secore & Waller.[2]

Secore & Waller is a Texas limited liability partnership and law firm maintaining a principal place of business in Dallas, Texas. *Complaint* ¶ 28. Secore & Waller prepared the PPMs for SR-4 and SR-12. *Id.* Secore & Waller did not provide investment advice, legal advice, or have any communications whatsoever with Plaintiffs. *Compl. passim.*

The Miles Trust purchased the following investments, relevant to this Motion, on or about the following dates and in the following amounts: (1) SR-4 preferred stock in the amount of $50,000 on July 2, 2007; (2) SR-12 preferred stock (series A) in the amount of $40,000 on June 16, 2008; (3) SR-12 preferred stock (series B) in the amount of $40,000 on June 16, 2008. *Complaint* ¶ 61.

---

[2] Plaintiffs have failed to allege that the Credit Trust purchased any of the SR securities at issue here. *Complaint*, ¶¶ 1, 61-62. Rather, the Complaint alleges The Credit Trust (not an "accredited investor" with the ability to purchase the Provident stock offerings), through sham loans to the Miles Trust (an "accredited investor" with the ability to purchase the Provident stock offerings) purchased SR-4 preferred stock in the amount of $100,000 on July 2, 2007. *Complaint* ¶ 61. "Only a purchaser or seller of securities has standing to bring an action under Section 10(b) and Rule 10b-5." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 749, 95 S. Ct. 1917, 44 L.Ed.2d 539 (1975). Plaintiffs' allegations that the Credit Trust made loans to the Miles Trust, and then the Miles Trust purchased the securities at issue does not confer standing upon the Credit Trust to bring any claims against Lawrence. *See Unity House, Inc. v. North Pacific Investments, Inc.*, 918 F. Supp. 1384, 1389 (D. Ct. Hawaii 1996) (Court found customer did not have standing to sue under Section 10(b) or Rule 10b-5 for money that had been fraudulently converted from customer and used to purchased securities.) Accordingly, the Credit Trust cannot assert a claim against Secore & Waller related to the purchase of SR-4 stock.

The Credit Trust (<u>not</u> an "accredited investor" with the ability to purchase the Provident stock offerings), through sham loans to the Miles Trust (an "accredited investor" with the ability to purchase the Provident stock offerings) allegedly "purchased" (for lack of a better word) the following investments, relevant to this Motion, on or about the following dates and in the following amounts:   (1) SR-4 preferred stock in the amount of $100,000 on July 2, 2007. *Complaint* ¶ 61.   Secore & Waller was not involved in the sham loan in any way.   *Complaint* ¶ 82 subparagraphs b & c.

Plaintiffs do not allege that Naomi Miles ever received a PPM related to the Miles Trust's purchase of $50,000 of SR-4 stock or the Credit Trust's (through sham loans to the Miles Trust) purchase of $100,000 of SR-4 stock.   *Complaint* ¶¶ 61, 82-83.   Plaintiffs allege that Miles received a PPM from her brokers for the SR-12 offering, yet do not specify *when* Miles received this PPM. *Complaint* ¶ 98.   Plaintiffs do not allege that Ms. Miles read the PPM for SR-4 or SR-12 or relied upon the PPMs in purchasing the stock. *Compl.,* ¶ 99.   Rather, Plaintiffs allege that "[a]s a direct and proximate result of [her brokers'] solicitation, on or about June 16, 2008, the Miles Trust purchased…" the SR-12 stock. *Complaint* ¶ 99.

Further, the Complaint alleges that Plaintiffs may have first become aware that Secore & Waller drafted the PPMs well after the Trusts purchased the SR-4 and SR-12 stock.   Plaintiffs allege that Miles may have first become aware that Secore & Waller might have drafted the PPMs for SR-4 and SR-12 from a **November 14, 2008** due diligence report of Mick & Associates, Inc. for the **Shale Royalties 19** offerings**.**   *Complaint* ¶ 28a. (emphasis supplied)

Plaintiffs never purchased Shale Royalties 19 offerings; rather the Trusts purchased only SR-4 and SR-12 offerings.   *Complaint* ¶ 43.   Further, Plaintiffs purchased the SR-4 and SR-12 offerings on **July 2, 2007** and **June 16, 2008** respectively.   *Complaint* ¶¶ 43 and 61.   The Complaint concedes that Plaintiffs did not know that Secore & Waller drafted the PPMs until well after both the Credit Trust (through a sham loan to the Miles Trust) and the Miles Trust purchased the $230,000 in stock.   Plaintiffs have not sued Provident, any of its principals or subsidiaries, or SR-4 and SR-12.   *Complaint* ¶¶ 10-28.   Rather Plaintiff has elected only to sue Secore & Waller.

Secure & Waller is entitled to dismissal, with prejudice, of all claims.

## IV.   <u>LEGAL ARGUMENT</u>

Secore & Waller is simultaneously moving to dismiss the claims against it filed in the

consolidated case of The Martha W. Gibbs Rev. Trust, et al. v. Lawrence, et al., Civil Action No. 2010-CV-0120-WFD.  The arguments raised in that Motion are equally applicable to the case at bar, and the factual allegations only differ slightly.  Secore & Waller incorporate by reference the arguments raised in the Gibbs Motion to Dismiss as if fully set forth herein.  As relates specifically to the claims asserted by the Plaintiffs in the case at bar, Secore & Waller submit the following legal authority, which mandates dismissal of all claims against it.

### A.  FED. R. CIV. P. 12(b)(6) STANDARDS

Rule 12(b)(6) provides for dismissal of a Complaint for "failure to state a claim upon which relief can be granted."  FED. RULE CIV. P. 12(b)(6).  When determining whether to dismiss a case for failure to state a claim pursuant to FED. R. CIV. PROC. 12(b)(6), only well-pleaded, nonconclusory factual allegations in the complaint are accepted as true and viewed in light most favorable to the nonmoving party.  *Ashcroft v. Iqbal,* --- U.S. ---, 129 S.Ct. 1937, 1949-50 , 173 L.Ed.2d 868 (2009); *Moore v. Guthrie,* 438 F.3d 1036, 1039 (10th Cir. 2006).  Conclusory allegations will not be similarly treated, nor will arguments that extend beyond allegations contained in the complaint.  *Bauchman v. West High Sch.,* 132 F.3d 542, 550 (10th Cir. 1997). "The complaint itself must show [plaintiff] is 'entitled to relief' under each claim raised."  *Id.* As the Supreme Court stated in *Iqbal*:

> As the Court held in *Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S.Ct. 1955 (citing *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.,* at 557, 127 S.Ct. 1955.

*Iqbal*, 129 S. Ct. 1949.

Pursuant to *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a complaint must allege, "more than labels and conclusions, and formulate the elements of a cause of action…"The alleged facts must "raise a right to relief above the speculative level." *Id.*   The Tenth Circuit has embraced and interpreted the standard set forth in *Twombly*:

> Following *Twombly*, we determined that "plausibility," as used by the Supreme Court referred to the scope of allegations in a complaint, and "if they are so general that they encompass a wide swath of conduct, and much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible."

*Phillips v. Bell*, 265 Fed. Appx. 133, 138 (10th Cir. 2010) citing *Robbins v. Oklahoma*, 519 F. 3d 1242, 1246 (10th Cir. 2008).  As the Tenth Circuit held in Phillips,

> While, generally, only the complaint and its allegations are considered in a motion to dismiss, documents referred to in the complaint may be considered at the motion-to-dismiss stage if they are "central to the plaintiff's claim" and their authenticity is undisputed. . . . In reviewing a motion to dismiss, it is important to note "Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Robbins v. Oklahoma,* 519 F.3d 1242, 1246 (10th Cir. 2008. In the past, we "generally embraced a liberal construction of [this] pleading requirement," and held "a complaint containing only conclusory allegations could withstand a motion to dismiss unless its factual impossibility was apparent from the face of the pleadings...." *Id.*  However, the Supreme Court has recently "clarified" this standard, stating that "to withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Id.* at 1247 (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955, so that "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."

*Id.* at 138-139.

For the reasons set forth below, Plaintiffs' Complaint does not allege any clear set of plausible facts upon which relief can be granted, or any reasonably cognizable claim against Secore & Waller.  Hence, Secore & Waller requests that all claims against the law firm be dismissed with prejudice.

### B.  Overview of Federal Securities Law.

The Private Securities Litigation Reform Act of 1995, Pub.L. No. 104-67, 109 Stat. 737, (the "PSLRA") mandates a more stringent pleading standard for securities fraud actions in general, and for scienter allegations in particular. *City of Philadelphia v. Fleming Cos.,* 264 F.3d 1245, 1258 (10th Cir. 2001). The PSLRA, therefore, requires the Court to disregard all "catch-all" or "blanket" assertions that do not live up to the particularity requirements of the statute. *In*

*re Navarre Corp. Sec. Litig.,* 299 F.3d 735, 741 (8th Cir. 2002).   Moreover, inferences of scienter must be both reasonable and strong to survive dismissal.  *Kushner v. Beverly Enters., Inc.,* 317 F.3d 820, 827 (8th Cir. 2003); *Helwig v. Vencor, Inc.,* 251 F.3d 540, 551 (6th Cir. 2001) (*en banc*); *Greebel v. FTP Software, Inc.,* 194 F.3d 185, 195-96 (1st Cir. 1999).

### C.  Plaintiffs' Claims Against Secore & Waller under 15 U.S.C. §78j(b) and 17 C.F.R. §240.10b-5 Must Be Dismissed

Section 10(b) of the Securities Exchange Act makes it:

> unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange ... [t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. §78j.  Further, pursuant to this section, the SEC promulgated Rule 10b-5, which makes it unlawful

> (a) To employ any device, scheme, or artifice to defraud,

> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

> c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, "in connection with the purchase or sale of any security."

17 CFR §240.10b-5.

The text of the Securities Exchange Act does not provide for a private cause of action for §10(b) violations.  *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta,* 552 U.S. 148, 156-157, 128 S. Ct. 761, 768, 169 L. Ed. 2d 627 (2008) (citing *Superintendent of Ins. of N.Y. v. Bankers Life & Casualty Co.,* 404 U.S. 6, 13, n. 9, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971)).  However, the Supreme Court has found a right of action implied in the words of the statute and its implementing regulation.  *Id.*  The implied private right of action under Rule 10b-5 was reaffirmed by the Supreme Court in *Herman & MacLean v. Huddleston*, 459 U.S. 375, 103 S. Ct. 683, 74 L. Ed. 2d 548 (1983).  The Court explained the relationship between the implied cause of

action under Section 10(b) of the 1934 Act and express liability under Section 11 of the 1933 Act, as follows:

> Although limited in scope, Section 11 places a relatively minimal burden on a plaintiff. In contrast, Section 10(b) is a "catchall" antifraud provision, but it requires a plaintiff to carry a heavier burden to establish a cause of action. While a Section 11 action must be brought by a purchaser of a registered security, must be based on misstatements or omissions in a registration statement, and can only be brought against certain parties, a Section 10(b) action can be brought by a purchaser or seller of "*any* security" against "*any* person" who has used "*any* manipulative or deceptive device or contrivance" in connection with the purchase or sale of a security. 15 U.S.C. §78j (emphasis added). However, a Section 10(b) plaintiff carries a heavier burden than a Section 11 plaintiff. Most significantly, he must prove that the defendant acted with scienter, *i.e.,* with intent to deceive, manipulate, or defraud.

*Herman & MacLean v. Huddleston*, 459 U.S. 375, 382.

Although an implied private right of action exists under §10(b) of 15 U.S.C. §78j, liability under 10(b) does not extend to aiders and abettors. *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 177, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994); *and Stoneridge,* 552 U.S. at 158. In *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, the Supreme Court ruled that aiding and abetting liability may not be imposed under Rule 10b-5. Rather, for secondary actors such as lawyers and accountants to be liable under Rule 10b-5, the Supreme Court held that all of the requirements for primary liability must be satisfied. *Id.* Hence a person bringing a private right of action against a secondary actor under §10(b) must allege that the conduct of the secondary actor satisfies each of the elements or preconditions to primary actor liability under §10(b). *Stoneridge,* 552 U.S. at 158.

As such, to establish liability against **any** actor (primary or secondary) in a §10(b) private action a plaintiff must plead and prove: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, at 157 (*citing Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 341-342, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)); *see also Farlow v. Peat, Marwick, Mitchell & Co.,* 950 F.2d 982, 986 (10th Cir. 1992).

First, it is not clear that Plaintiffs are asserting any primary liability claims against Secore & Waller. To the extent they are, those claims must be dismissed. For a private litigant to

succeed on a claim for primary actor liability, it must prove that the statement on which the litigant relied was actually made by the defendant.  As the Tenth Circuit explained in *SEC v. Wolfson*, 539 F.3d 1249, 1257-1259 (10th Cir. 2008)

> [T]he [Supreme] Court recognized that secondary actors could be held liable under the statute so long as they themselves made a material misstatement or omission (or committed some other fraudulent act), and each of the remaining elements of liability under §10(b) are satisfied.
> …
> [A] secondary **actor** cannot incur **primary liability** under the Act for a statement not attributed to that **actor** at the time of its dissemination. Such a holding would circumvent the reliance requirements of the Act.

*Id*. (Internal citations omitted)

As the Second Circuit explained in *Shapiro v. Cantor,* 123 F.3d 717 (2d Cir.1997), "[i]f *Central Bank* is to have any real meaning, a defendant must actually make a false or misleading statement in order to be held liable under Section 10(b). Anything short of such conduct is merely aiding and abetting, and no matter how substantial that aid may be, it is not enough to trigger liability under Section 10(b)."  *Shapiro,* 123 F.3d at 720 (quoting *In re MTC Electronic Technologies Shareholders Litigation,* 898 F. Supp. at 987).

Moreover, a third party's review and approval of documents containing fraudulent statements is not actionable under Section 10(b) because one must *make* the material misstatement or omission in order to be a primary violator.  *Wright v. Ernst & Young, LLP,* 152 F.3d 169, 176 (2nd Cir. 1998); *see, also, In re Kendall Square Research Corporation Securities Litigation,* 868 F. Supp. 26, 28 (D.Mass.1994) (accountant's "review and approval" of financial statements and prospectuses insufficient); *Vosgerichian v. Commodore International,* 862 F. Supp. 1371, 1378 (E.D.Pa.1994) (allegations that accountant "advised" and "guid[ed]" client in making allegedly fraudulent misrepresentations insufficient).

Here, Plaintiffs have not alleged that Secore & Waller made any material misstatements or omissions.  Plaintiffs have alleged misstatements and omissions in the PPMs that are not attributed to Secore & Waller.  Secore & Waller is not identified in anywhere the PPM.  No statement within or outside the PPM is attributable to Secore & Waller.  There is simply no basis for primary liability here.  The same reasoning holds true for secondary actor liability.

To the extent Plaintiffs are asserting claims of secondary liability against Secore & Waller, Plaintiffs have failed to plead the required elements of a §10(b) claim against Secore &

Waller in their Complaint. Specifically, under recent federal case law, Secore & Waller, as a secondary actor, cannot be liable for merely assisting in drafting the Private Placement Memoranda not attributed to Secore & Waller at the time of dissemination. *See  Pacific Inv. Management Co. LLC v. Mayer Brown, LLP,* 603 F.3d 144, 148 (2nd Cir. 2010); *accord, Shapiro,* 123 F.3d at 720*; and SEC v. Wolfson,* 539 F.3d at 1257-58 (10th Cir. 2008). Moreover, with respect to the §10(b) claims against Secore & Waller, Plaintiffs have failed to plead the required element of scienter. Plaintiffs have not alleged any facts demonstrating scienter. Plaintiffs have merely alleged that Secore & Waller "should have known" of the alleged risks presented by a lack of audited financial statements. Further, the facts as alleged do not establish a connection between the alleged misrepresentation or omission by Secore & Waller and the purchase of the Provident offerings, do not establish reliance on the SR-4 or SR-12 PPM, and do not establish loss causation. Plaintiffs therefore have failed to state a claim against Secore & Waller under 15 U.S.C. §78j(b) and 17 C.F.R. §240.10b-5 upon which relief can be granted.

> **a. Secore & Waller Cannot Be Liable Under 15 U.S.C. §78j(b) and 17 C.F.R. §240.10b-5 for Merely Assisting in the Drafting of the Private Placement Memoranda.**

Plaintiffs' claim against Secore & Waller under §10(b) must be dismissed under FED. R. CIV. P. 12(b)(6) as Plaintiffs have failed to assert that any allegedly false statement in the SR-4 and SR-12 PPMs were attributable to Secore & Waller at the time the SR-4 and SR-12 PPMs were disseminated. The Second Circuit has held that for a defendant to be liable under §10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 for making false statements, the false statements must have been attributed to the defendant at the time they were disseminated. *Pacific Inv. Management Co. LLC v. Mayer Brown, LLP,* 603 F.3d at 148. It is not sufficient that the defendant created, drafted or assisted in drafting the allegedly false statements. *Id*

In *Pacific Investment,* the plaintiffs invested in the corporate stock of Refco. Refco collapsed and plaintiffs lost their investments. *Id.* at 144. The plaintiffs sued Refco's outside counsel, Mayer, Brown, Rowe & Maw LLP and Mr. Collins, a partner at Mayer Brown, who was the law firm's primary contact with Refco. *Id.* Plaintiffs' claims were based on a fraudulent scheme involving sham loans that were designed to conceal the true financial condition of Refco. *Id.* Collins and Mayer Brown allegedly participated in the fraud by drafting documents for the transactions. *Pacific Inv. Management Co. LLC,* 603 F.3d at 149.

In the *Pacific Investment* case, Plaintiffs asserted claims for violations of section 10(b) of the Securities Exchange Act of 1934. *Id.,* at 150. Plaintiffs alleged that Mayer Brown and Collins participated in several of these sham loan transactions over a five-year period. *Id.,* at 149. According to plaintiffs' complaint, defendants' involvement included negotiating the terms of the loans, drafting and revising the documents relating to the loans, transmitting the documents to the participants, and retaining custody of and distributing the executed copies of the documents.[3] *Id.,* at 149-50. Plaintiffs also alleged that defendants were responsible for false statements appearing in three Refco documents: (1) an Offering Memorandum for an unregistered bond offering; (2) a Registration Statement for a subsequent registered bond offering; and (3) a Registration Statement for Refco's initial public offering of common stock. *Id.* Plaintiffs alleged that these documents failed to disclose the true nature of Refco's financial condition, which had been concealed through the multiple sham loans. *Id.*

The law firm and Collins moved to dismiss plaintiffs' claims. A federal district court granted defendant's Rule 12(b)(6) motion to dismiss this claim. *See In re Refco, Inc. Sec. Litig.,* 609 F.Supp.2d 304 (S.D.N.Y. 2009). The circuit court affirmed and held that attorneys may not be held liable for violating Rule 10b-5 for drafting false statements that are not attributed to them at the time the statements are disseminated. *Pacific Inv. Management Co. LLC v. Mayer Brown, LLP,* 603 F.3d at 155.

The Second Circuit held that to be held liable for violating Rule 10b-5, it is not enough that the secondary actor defendant created the false statement. *Id.* at 151. Further, the Second Circuit found that to be held liable for violating Rule 10b-5, it is not enough for the secondary actor to simply be identified in the document containing the false statement. *Id.* at 150. Rather, the Second Circuit determined that to be held liable for violating Rule 10b-5, the allegedly false statement must be attributed to the secondary actor defendants in the document at the time the document is disseminated – i.e. at the time the false statement was disseminated, the secondary actor defendant must be identified as the author of the document containing the allegedly false statement or identified as the author of the false statement itself. *Id.* at 158.

Under the rule requiring attribution, the court added, it is not enough that the secondary actor was identified as being involved in a transaction, or that the public understands that a

---

[3] By contrast, Plaintiffs make no such allegations here, only that Secore & Waller drafted the PPM.

secondary actor has a role behind the scenes.  Rather, the court held that "[a]n attribution requirement makes clear – to secondary actors and investors alike – that those who sign or otherwise allow a statement to be attributed to them expose themselves to liability.  Those who do not are beyond the reach of Rule 10b-5's private right of action." *Id.* at 157.

Applying the attribution requirement, the circuit court upheld the district court's dismissal of the Rule 10b-5(b) claims against Mayer Brown and attorney Collins under FED. R. CIV. P. 12(b)(6).  *Id.*  The Offering Memorandum, the Registration Statement, and the IPO Registration Statement did not mention Mr. Collins individually by name.  *Id.* at 158.  And although the Offering Memorandum and the IPO Registration Statement noted that Mayer Brown represented Refco, neither document attributed any particular statement to Mayer Brown or identified Mayer Brown as the author of any portion the document.  *Id.*  The court found that the attribution requirement was not satisfied by the mere fact that Mayer Brown was identified in the document as representing Refco.  *Id.*

The attribution requirement for secondary actor liability under §10(b) announced in *Pacific Inv. Management Co. LLC v. Mayer Brown, LLP,* is directly on point in this case and should be applied by this Court here.  Additionally the facts alleged in this case actually lend themselves better to application of the attribution requirement and mandate dismissal of Plaintiffs' §10(b) claim against Secore & Waller.

Clearly, the facts as plead in Plaintiffs Complaint mandate dismissal of all 15 U.S.C. §78j(b) and 17 C.F.R. 240.10(b)-5 claims against Secore & Waller under FED. R. CIV. P. 12(b)(6).  First, Plaintiffs do not allege that Naomi Miles ever received a PPM related to the Credit Trust's (through sham loans to the Miles Trust) purchase of $100,000 of SR-4 stock. *Complaint* ¶¶ 82-83.  Plaintiffs do allege that Miles received a PPM for SR-12 from her brokers, Pope and Glossi, for the SR-12 offering, yet do not specify when Miles received this PPM. *Complaint* ¶ 98.  Plaintiffs do not allege that she read the PPM for SR-12 or how, specifically, she relied upon it when purchasing $130,000 in SR-12 preferred stock for her Trusts.  *Complaint* ¶ 99.  In fact, Plaintiffs allege that "[a]s a direct and proximate result of *Pope and Glossi's* solicitation, on or about June 16, 2008, the Miles Trust purchased $40,000 of Preferred Stock in Series A in SR 12 and $40,000 of Preferred Stock Series B in SR 12." *Complaint* ¶ 99.

Additionally, Plaintiffs do not allege that Secore & Waller is identified as the drafter of the PPMs, nor can they.  Secore & Waller's name is not anywhere in the PPMs.  Additionally,

Plaintiffs' Complaint alleges that Miles may have become aware that Secore & Waller might have drafted the PPMs well after the Trusts purchased the stock. Plaintiffs allege that Miles became aware that Secore & Waller may have drafted the PPPM for SR-4 from a November 14, 2008 due diligence report of Mick & Associates, Inc. for the Shale Royalties 19 offering. *Complaint* ¶ 28a. Plaintiffs never purchased Shale Royalties 19 offerings, rather the trusts purchased only SR-4 and SR-12 offerings on July 2, 2007 and June 16, 2008 respectively, well before Miles alleges she ever heard of Secore & Waller. *Complaint* ¶¶ 43 and 61.

Clearly, Plaintiffs do not, and cannot, allege that any statements in the PPMs were attributable to Secore & Waller at the time of dissemination. Plaintiffs do not, and cannot, allege that Secore & Waller is identified in any way within the PPMs. Plaintiffs do not allege that Miles ever read the PPMs or identify how she allegedly relied upon them when purchasing preferred stock in SR-4 and SR-12. A conclusory allegation does not suffice under the Supreme Court's rulings in *Iqbal* and *Twombly*. In fact, Plaintiffs do not allege that Miles ever received a PPM for SR-4. The facts as pled in Plaintiffs Complaint mandate dismissal of all 15 U.S.C. §78j(b) and 17 C.F.R. §240.10b-5 claims against Secore & Waller under FED. R. CIV. P. 12(b)(6).

### b. Plaintiffs Have Failed to Plead Scienter against Secore & Waller.

As noted above, to prove any defendant violated Section 10(b) of the Securities Exchange Act, the plaintiff must show, among other things, the defendant acted with scienter. *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005). In fact, scienter, is the "most significant" heightened pleading requirement a Plaintiff must fulfill in private §10(b) actions. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382. Additionally, the Private Securities Litigation Reform Act (PSLRA) imposes on a plaintiff the heightened pleading requirement of scienter. Under the PSLRA's heightened pleading instructions, any private securities complaint alleging that the defendant made a false or misleading statement must: (1) "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading," 15 U.S.C. §78u-4(b)(1); and (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," §78u-4(b)(2). *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 321, 127 S. Ct. 2499, 2508, 168 L. Ed. 2d 179 (2007). Here, Plaintiffs have filed to allege any set of facts sufficient to show Secore & Waller acted with the requisite mental state.

The facts required to sufficiently plead scienter in a 10(b) claim must show "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 n. 12, 96 S. Ct. 1375, 47 L. Ed. 2d 668 (1976); *Herman & MacLean v. Huddleston*, 459 U.S. at 283; *SEC v. Ruberz,* 350 F. 3d 1084, 1094 (9th Cir. 2003).   In some cases, however, courts have held that "severe recklessness" can constitute scienter.  *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1238 (11th Cir. 2008).  However, severe recklessness requires more than "inexcusable negligence." *Ziemba v. Cascade International, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).  Actionable "recklessness" in the securities context is "conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care ... to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it."  *City of Philadelphia v. Fleming Companies, Inc.*, 264 F.3d 1245, 1264 (10th Cir. 2001); *see Durgin v. Mon*, 659 F. Supp. 2d 1240, 1255, (S.D. Fla. 2009) (holding that lack of due diligence was at most negligence, not reckless conduct).

In a Fed. R. Civ. P. 12(b)(6) context, to determine whether a complaint supports a strong inference of scienter, the Court must accept as true all factual allegations in the complaint and consider the complaint in its entirety, including documents incorporated into the complaint by reference and matters subject to judicial notice.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23  "The inquiry . . . is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard."  *Id.* (emphasis omitted).  "[I]n determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences."   *Id.*    Thus, the court considers "plausible nonculpable explanations for the defendant's conduct" in addition to inferences favoring the plaintiff. *Id.* at 2510.  "The inference of scienter must be more than merely 'reasonable' or 'permissible' - it must be cogent and compelling, thus strong in light of other explanations."  *Id.*  Ultimately, the court asks, "When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?"  *Id.*

Plaintiffs' Complaint makes no allegations of scienter whatsoever on the part of Secore & Waller.  The Complaint pleads no fact showing Secore & Waller possessed "a mental state embracing intent to deceive, manipulate, or defraud" when drafting the PPMs or any facts that would give rise to a strong inference of scienter on the part of Secore & Waller.  *See Ernst &*

*Ernst v. Hochfelder*, 425 U.S. 185, 194 n. 12; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23.   Rather, the only allegations against Secore & Waller – without stating any obligation to do so and assuming the truth of such allegations – is that it failed to conduct due diligence; failed to disclose the risk of the lack of audited financial statements, and failed to disclose that SR-4 and SR-12 "could" be Ponzi schemes.   *Complaint* ¶ 143.   These allegations do not even come close to properly asserting scienter, or the intent to deceive, manipulate or defraud potential investors, on the part of Secore & Waller.   Rather these allegations more closely resemble a claim of negligence. S*ee Durgin v. Mon*, 659 F. Supp. 2d at 1255 (stating lack of due diligence is at most negligence).   Negligence cannot be grounds for recovery under §10(b).   *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 214. Plaintiffs certainly fail to state a claim under §10(b) upon which relief can be granted.

Taking the allegations in the Complaint as a whole, it is apparent that Plaintiff has not alleged that Secore & Waller acted with scienter, or had the requisite "intent to deceive, manipulate or defraud," any investor, much less Naomi Miles or her Trusts.   Plaintiffs have not alleged that Miles had any contact with Secore & Waller or knew anything about the existence of Secore & Waller prior to or at the time the Credit Trust and/or the Miles Trust invested in the Provident offerings.

Moreover, Plaintiffs proffer only conclusory allegations that "Secore & Waller, as attorneys, and purported experts in transactional securities, either knew, or recklessly ignored warning signs that the Provident offerings were or may be fraudulent Ponzi schemes…." *Complaint* ¶ 143.   Plaintiffs offer no facts to support this claim.   Rather, Plaintiffs base this conclusory statement on a logical fallacy – that under similar circumstance "attorneys or…experts in transactions securities" must "know" or would otherwise have to "ignore" the mere possibility that certain security offerings "may" possibly become fraudulent Ponzi schemes. *See Complaint* ¶ 143.   These conclusory allegations are not grounded in fact and certainly cannot support Plaintiffs §10(b) claim against Secore & Waller under the heightened pleading requirements required to maintain a 10(b) claim.

### c.   Plaintiffs Have Not Alleged Reliance on the PPMs

The rule requiring attribution of a false statement to a secondary actor is consistent with the Supreme Court's holding in *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148 (2008).   *See Pacific Inv. Management Co. LLC,* 603 F.3d at155-156.   In

*Stoneridge*, which involved deceptive conduct rather than false statements, the Supreme Court held that a secondary actor could not be held liable under Rule 10b-5 where the plaintiff did not rely on the secondary actor's own deceptive conduct, rather than the primary actor's deceptive conduct. *Stoneridge.*  Under *Stoneridge*, direct reliance is required for a Rule 10b-5 claim.  *Id.*

Again, Plaintiffs do not allege that Naomi Miles ever received a PPM related to the Credit Trust's (through sham loans to the Miles Trust) purchase of $100,000 of SR-4 preferred stock.  *Complaint* ¶¶ 82-83.  Plaintiffs do allege that Miles received a PPM from her brokers, Pope and Glossi, for the SR-12 offering, yet do not specify when Miles received this PPM. *Complaint* ¶ 98.  Plaintiffs do not allege that she read the PPM for SR-12 or relied upon it when purchasing SR-12 preferred stock. *Complaint* ¶ 99.  In fact, Plaintiffs allege that "[a]s a direct and proximate result of **Pope and Glossi's** solicitation, on or about June 16, 2008, the Miles Trust purchased $40,000 of Preferred Stock in Series A in SR 12 and $40,000 of Preferred Stock Series B in SR 12." *Complaint* ¶ 99.  Plaintiffs make no similar allegations regarding direct reliance on PPMs or statements by Secore & Waller in purchasing Shale Royalties stock.  Hence, Plaintiffs have failed to allege yet another required element of a §10(b) claim against Secore & Waller - reliance.  As such, Plaintiffs' §10(b) claim against Secore & Waller must be dismissed with prejudice under FED. R. CIV. P. 12(b)(6).

### d.  Plaintiffs Cannot Establish Loss Causation Against Secore & Waller.

In *Huddleson v. Herman & MacLean,* 640 F.2d 534, 549 (5th Cir. 1981) *aff'd in part, rev'd in part by, Herman & MacLean v. Huddleston*, 459 U.S. 375 (1983), the Fifth Circuit stated that in an action under §10(b):

> Causation is related to but distinct from reliance. Reliance is a *causa sine qua non*, a type of "but for" requirement: had the investor known the truth he would not have acted. Causation requires one further step in the analysis: even if the investor would not otherwise have acted, was the misrepresented fact a proximate cause of the loss? The plaintiff must prove not only that, had he known the truth, he would not have acted, but in addition that the untruth was in some reasonably direct, or proximate, way responsible for his loss. The causation requirement is satisfied in a Rule 10b-5 case only if the misrepresentation touches upon the reasons for the investment's decline in value. If the investment decision is induced by misstatements or omissions that are material and that were relied on by the claimant, but are not the proximate reason for his pecuniary loss, recovery under the Rule is not permitted. Absent the requirement of causation, Rule 10b-5 would become an insurance plan for the cost of every security purchased in reliance upon a material misstatement or omission

*Huddleson,* 640 F. 2d at 549 (internal citations omitted).

Loss causation requires a showing that the misrepresentations or omissions caused the economic harm. *Huddleson,* 640 F.2d at 549. In other words, a plaintiff must demonstrate that the defendant's fraudulent conduct "touches upon the reasons for the investment's decline in value." *Id.* "If the particular loss complained of is caused by supervening general market forces or other factors unrelated to the defendant's misconduct that operate to reduce the value of the plaintiff's securities, the plaintiff is precluded from recovery under Rule 10b-5." *Bruschi v. Brown,* 876 F.2d 1526, 1530 (11th Cir. 1989).

Here, Plaintiffs' Complaint is devoid of any allegations related to the alleged acts or omissions of Secore & Waller that touch in any way on loss causation. First, Plaintiffs have failed to allege that they received the SR-4 PPM. *Complaint* ¶¶ 82-83. Plaintiffs also fail to assert any facts demonstrating reliance on the SR-12 PPM in purchasing the SR-12 preferred stock. *Complaint* ¶ 99. Further, Plaintiffs have not alleged that any statement in the SR-4 or SR-12 PPMs was attributable to Secore & Waller at the time of dissemination. Finally, as specifically related to loss causation, Plaintiff has not alleged that any allegedly false statement in the SR-4 or SR-12 PPMs caused Plaintiffs' investments to decline in value. In fact, Plaintiffs specifically allege that Provident Royalties, LLC – not Secore & Waller – operated a fraudulent ponzi scheme involving SR-4 and SR-12, which caused Plaintiffs' investments to decline in value. Consequently, Plaintiffs cannot recover under §10(b) as factors other than alleged omissions in the SR-4 and SR-12 PPMs, namely Provident Royalties, LLC alleged Ponzi scheme involving SR-4 and SR-12, caused the loss in the value of Plaintiffs' securities. *See, Bruschi v. Brown,* 876 F.2d at 1530. Plaintiffs do not allege that any act, omission or statement of Secore & Waller caused Plaintiffs' investments to decline in value, nor can they. Hence, Plaintiffs have failed to establish the requisite element of their §10b claim – loss causation. Plaintiffs' §10b claim against Secore & Waller must be dismissed accordingly.

**D. Plaintiffs' Fifth Claim For Relief Against Secore & Waller for Violation of the Wyoming Securities Act, WS §17-4-122(a), Must Be Dismissed.**

This Court has held that Wyoming Statute §17-4-101, *et seq.*, is "fairly analogous to the federal claim regarding Section 10 of the Securities of the Exchange Act and Rule 10b-5." *Ravenswood Inv. Co., v. Bishop Capital Corp.,* 374 F. Supp. 2d 1055, 1065 (D. Wyo. 2005). In

other words, section WS §17-4-122(a)(ii) is the Wyoming state law equivalent to a claim under Section 10(b) of the Securities Exchange Act or a Rule 10b-5 claim.  The same federal authority cited above applies with equal force to Plaintiffs' claims under the Wyoming state statute. *Ravenswood*, 374 F. Supp. 2d at 1065.  Section 17-4-122(a)(ii) of the Wyoming Securities Act states that any person who:

> Offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading (the buyer not knowing of the untruth or omission), and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission, is liable to the person buying the security from him . . .

Wyo. Stat. Ann §17-4-122(a)(ii).

Case law applying WS §17-4-122 is sparse.  However, the statutory language mandates dismissal of this claim against Secore & Waller with prejudice.  Wyo. Stat. Ann. §17-4-133 (a)(ix)(A) defines  "sale" or "sell" to include "every contract of sale of, contract to sell, or disposition of, a security or interest in a security for value".  Wyo. Stat. Ann. §17-4-113 (a)(ix)(A).  Further, Wyo. Stat, Ann. §17-4-113 (a)(ix)(B) defines "Offer" or "offer to sell" to include "every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security for value".

Plaintiffs have only alleged that Secore & Waller prepared the PPM of SR-12, the security purchased by the Trusts which is the subject of this Wyoming Securities Act claim. *See Complaint* ¶ 28 (any Wyoming Securities Act claim regarding SR-4 would be barred by the two-year statute of limitations set forth in Wyo. Stat. Ann. 17-4-122(e) – discussed below)*.  Plaintiffs do not allege that Secore & Waller sold or offered to sell any securities to Naomi Miles, the Miles Trust or the Credit Trust. *Complaint.*

Wyo. Stat. Ann §17-4-122(a)(ii) explicitly applies only to "[a]ny person who **"[o]ffers** or **sells** a security…" *Id.* (emphasis added).  Plaintiffs have alleged only that Secore & Waller may have drafted the PPM for SR-12 and absolutely have not alleged that Secore & Waller sold, offered, or offered to sell any securities, including preferred stock in SR-12, to Miles or her Trusts.  The language of the Wyoming Securities Act statute is clear and unambiguous and therefore should be construed as written. *See State v. Nelson,* 49 P.3d 185, 188 (Wyo. 2002).  As such, Plaintiffs' claim against Secore & Waller under Wyo. Stat. Ann. §17-4-122 must be

dismissed for failure to state a claim upon which relief can be granted pursuant to FED. R. CIV. P. 12(b)(6) and/or Wyo. R. Civ. P. 12(b)(6).

### a. Plaintiffs' Wyoming Securities Act Claim regarding SR-4 is Barred by the Applicable Statute of Limitations.

Wyo. Stat. Ann. 17-4-122(e) states "[n]o person may sue under this section more than two (2) years after the contract of sale." Plaintiffs allege that the Trusts' purchases of SR-4 preferred stock occurred on July 2, 2007. *Complaint ¶¶*61-62. Plaintiffs filed their Complaint on February 26, 2010. Consequently, all claims Plaintiffs may have had under the Wyoming Securities Act related to SR-4 purchases are barred by the applicable two-year statute of limitations. Wyo. Stat. Ann. 17-4-122(e). Plaintiffs appear to be aware of this and have only pled a Wyoming Securities Act claim related to purchases of SR-12. *Complaint ¶¶* 189-192.

### E. Plaintiffs' Eighth Claim For Relief Against "Defendants" (Assumingly Including Secore & Waller) for Fraud Must Be Dismissed.

Under Wyoming common law, actionable common law fraud "is established when a plaintiff demonstrates, by clear and convincing evidence, that (1) the defendant made a false representation intended to induce action by the plaintiff; (2) the plaintiff reasonably believed the representation to be true; and (3) the plaintiff relied on the false representation and suffered damages." *Marchant v. Cook,* 967 P.2d 551,554 (Wyo. 1998); *Birt v. Wells Fargo Home Mortgage, Inc.* 75 P.3d 640, 656 (Wyo. 2003). As this Court held in *Ravenswood*, 374 F. Supp. 2d at 1066:

> In order to prevail on a common law fraud allegation under Wyoming law, a plaintiff must prove (1) that the defendant made a false representation to induce action, (2) that the plaintiff relied upon the representation to his detriment, and (3) that the plaintiff reasonably believed the representation to be true. *Halliburton Co. v. Claypoole,* 868 P.2d 252, 256 (Wyo.1994) (citing *Lavoie v. Safecare Health Service, Inc.,* 840 P.2d 239, 252 (Wyo.1992)).
>
> Plaintiffs' common law fraud claim suffers from the same deficiencies as their §78r claim. Based upon the Amended Complaint, Plaintiffs cannot show that they relied upon a statement to their detriment.

The elements of common law fraud are similar to the elements of a §10(b) claim. *Id.* (dismissing Wyoming state law fraud claim for the same deficiencies as noted in plaintiff's claim under §78r of the Securities and Exchange Act.) Importantly, under §10(b) and common law

fraud, the plaintiff must establish that the defendant made an untrue statement or false representation with intent or "scienter." *See, e.g., Willmschen v. Meeker,* 750 P.2d 669, 672 (Wyo. 1988); and *Brooks v. Zebre,* 792 P.2d 196,202 (Wyo. 1990).

In the case at bar, for substantially the same reasons that Plaintiffs cannot maintain their §10(b) and Wyoming Securities Act claims against Secore & Waller, Plaintiffs cannot maintain a common law fraud claim against Secore & Waller.

### a.   Plaintiffs Failed to Plead Fraud With Particularity.

Dismissal of a claim for failure to meet the particularity requirements of Rule 9(b) is treated as a dismissal for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *Seattle-First National Bank v. Carlstedt,* 800 F.2d 1008, 1011 (10th Cir.1986). Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Id.* The primary purpose of Rule 9(b) is to afford a defendant fair notice of the plaintiff's claim and of the factual ground upon which it is based. *Farlow v. Peat, Marwick, Mitchell & Co.,* 956 F.2d 982, 987 (10th Cir.1992) (overruled on other grounds). Rule 9(b) also safeguards defendant's reputation and goodwill from improvident charges of wrongdoing and inhibits the institution of strike suits. *Id.* Courts within the Tenth Circuit rigorously enforce these purposes. *Id.* A complaint alleging fraud must set forth the time, place and contents of the false representation, the identity of the party making the false statements, and the consequences of the fraud. *Tal v. Hogan,* 453 F.3d 1244, 1263 (10th Cir.2006) quoting *Koch v. Koch Industries, Inc.,* 203 F.3d 1202, 1236 (10th Cir.2000).

Again, Plaintiffs have not specifically alleged that Naomi Miles relied on any of the PPMs when purchasing SR-4 or SR-12 preferred stock for the Miles Trust or the Credit Trust. Rather, Plaintiffs aver generally, and in a conclusory fashion, that Miles relied upon, among other things, "the written representations made in the private placement memoranda and other offering materials provided to her." *Complaint ¶* 207. Yet, Plaintiffs failed to allege that Miles ever received a PPM for SR-4 either before of after she purchased SR-4 stock for her Trusts. Plaintiffs did not allege that Miles read the PPM for SR-12 either before of after she purchased SR 12 stock for the Miles Trust. These are particulars that the Rule 9(b) mandates and which Plaintiffs have completely failed to allege in the Complaint. Consequently, without these particulars, Plaintiffs' Complaint fails to allege with the requisite particularity that she relied on allegedly false statements in the PPMs or how she did so. Therefore, the alleged false statements

in the PPMs could legally have no consequences on Naomi Miles or her Trusts.  In addition, no alleged false statements are attributed to Secore & Waller.  As such, Plaintiffs common law fraud claim must be dismissed with prejudice as to Secore & Waller.

### b. Plaintiffs have alleged Fraud Generally Against All Defendants in Violation of PSLRA Requirements.

PSLRA "requires Plaintiff to distinguish among those they sue and enlighten each defendant as to his or her particular part in the alleged fraud." *Southland Securities Corp. v. Inspire Ins. Solutions,* 365 F.3d 353, 365 (5th Cir. 2004).  Instead, in their Eighth Claim for Relief, Plaintiffs group all Defendants, including Secore & Waller, together along with all Defendants' alleged participation in the multiple frauds allegedly perpetrated on Miles and her Trusts.  Plaintiffs "shotgun" approach to pleading fraud in this matter demands dismissal of the common law fraud claim against Secore & Waller with prejudice.

### F. Plaintiffs' Tenth Claim For Relief Against "Defendants" (Assumingly Including Secore & Waller) for Negligence Must Be Dismissed.

Plaintiffs' Tenth Claim for relief seeks recovery under a theory of negligence.  The four elements of negligence are, "(1) the defendant owed the plaintiff a duty to conform to a specified standard of care; (2) the defendant breached the duty of care; (3) the defendant breached that duty of care proximately causing injury to the plaintiff; and (4) the injuries sustained by the plaintiff is compensable by money damages." *Birt v. Wells Fargo Home Mortgage, Inc.*, 75 P.3d 640, 658 (Wyo. 2003). Count Ten of Plaintiffs' Complaint is devoid of the facts that Plaintiffs allege compose their claim for negligence against Secore & Waller.  *Complaint* ¶¶ 216-218).

Plaintiffs allege that Secore & Waller owed a duty to those who foreseeably would rely upon the PPM.  *Complaint* ¶122.  Plaintiffs are mistaken.  This grafting of a tort concept of foreseeability in the context of securities litigation was rejected in the Supreme Court case of *Pinter v. Dahl*, 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658.  Secore & Waller owed no duty to anyone other than its clients.  In fact, the existence of a duty to counterparties to a transaction could create a conflict with the duty of the firm to its client.

Additionally, under Wyoming law, to establish a negligence claim against a legal professional, the plaintiff must first establish that the attorney owed him a duty, then the plaintiff has the obligation to establish (1) the accepted standard of legal care or practice, (2) that the

lawyer's conduct departed from the standard, and (3) that his conduct was the legal cause of the injuries suffered. *Moore v. Lubnau,* 855 P.2d 1245, 1248 (Wyo. 1993) (holding the long-held standards in a medical malpractice claim are analogous and should be applied to a legal malpractice claim).

The existence of a duty a defendant owes to a plaintiff is a question of law, " 'making an absence of duty the surest route to summary judgment in negligence actions.' " *In re Estate of Drwenski*, 83 P.3d 457, 461 (Wyo. 2004) (citing *Schuler v. Community First National Bank,* 999 P.2d 1303, 1306 (Wyo.2000)).   Here, in Count Ten of Plaintiffs' Complaint, Plaintiffs failed to allege that Secore & Waller owed Naomi Miles or her Trusts any duty whatsoever. *Complaint* ¶¶ 215 – 218.  This Court must dismiss Plaintiffs' negligence claim against Secore & Waller.

In Wyoming, an attorney is immune from negligence claims brought by a non-client except in limited circumstances where the client intends the attorneys' services to directly benefit a third party non-client. *Estate of Drwenski,* 83 P.3d at 464. Thus, the threshold inquiry must be whether the plaintiff is the intended beneficiary of the transaction; if not, no further inquiry need be made. *Estate of Drwenski,* 83 P.3d at 464 (citing *Strait v. Kennedy,* 103 Wash.App. 626, 13 P.3d

Here, Plaintiffs lack standing to sue the attorney for legal malpractice. *Estate of Drwenski,* 83 P.3d at 464 (citing *Leipham v. Adams,* 77 Wash.App. 827, 832, 894 P.2d 576 (1995)).  An "intended beneficiary" of the transaction under this rule means just that - the transaction must have been intended to benefit the plaintiff; it is not enough that the plaintiff may be an incidental beneficiary of the transaction. *Estate of Drwenski,* 83 P.3d at 464 (citing *Trask v. Butler,* 123 Wash.2d 835, 845, 872 P.2d 1080 (1994).

Whether a limited duty an attorney owes to a nonclient exists must be assessed on a case-by-case basis utilizing the following factors: (1) the extent to which the transaction was intended to directly benefit the plaintiff; (2) the foreseeability of harm; (3) the degree of certainty that the plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury suffered; (5) whether expansion of liability to the nonclient would place an undue burden on the legal profession; and (6) the policy of preventing future harm. *Estate of Drwenski,* 83 P.3d at 464-65.

Reviewing Plaintiffs' Compliant in a light most favorable to Plaintiffs, this Court must dismiss Plaintiffs negligence claim against Secore & Waller for failure to state a claim.

Plaintiffs' Complaint is devoid of factual allegations that would establish any duty Secore & Waller owed to Miles or her Trusts.  Further Plaintiffs have not pled facts that can plausibly establish Secore & Waller's work on this matter on behalf of Provident Royalties, LLC was intended to benefit Miles or her Trusts.  As such, under Wyoming law, no further inquiry into the lawyers', Secore & Waller's, liability to non-clients, Plaintiffs, is necessary. *Estate of Drwenski,* 83 P.3d at 464.  As such, Plaintiffs' claim for negligence against Secore & Waller must be dismissed under FED. R. CIV. P. 12(b)(6).

## V.   CONCLUSION

For the foregoing reasons, and based upon the forgoing authorities, all claims against Secore & Waller must be dismissed under FED. R. CIV. P. 12(b)(6).   Secore & Waller respectfully requests this Court enter an order dismissing all claims against it, with prejudice.

**DATED** this 25th day of August, 2010.

Respectfully Submitted,

*S/_____*Traci L. Van Pelt*
Traci L. Van Pelt, Wyo. Bar No. 6-4330
Michael T. McConnell, Wyo, Bar No. 5-2942
Jared C. Lockwood, *Pro Hac Vice*
**McConnell Fleischner Houghtaling & Craigmile, LLC**
Denver Corporate Center, Tower 1
4700 South Syracuse Street, Suite 200
Denver, Colorado  80237-2710
Phone Number: 303-480-0400
Fax Number: 303-458-9520
tvanpelt@mfhc.com
mmcconnell@mfhc.com
jlockwood@mfhc.com

<u>**CERTIFICATE OF SERVICE**</u>

I, the undersigned, hereby certify that on this 25th day of August, 2010 a copy of the foregoing **DEFENDANT SECORE & WALLER LLP'S FED.R.CIV.P. 12(b)(6) MOTION TO DISMISS AND SUPPORTING BRIEF** has been e-filed and thereby served electronically via the Court's CM/ECF system to the following persons:

Kim D. Cannon, Esq.
J. Mark Stewart, Esq.
Davis & Cannon, LLP
P.O. Box 43
Cheyenne, WY  82001
cannon@davisandcannon.com
mark@davisandcannonchey.com
*Attorneys for Plaintiff*

John A. Hutchings
Dill Dill Carr Stonbraker & Hutchings, PC
455 Sherman Street, Suite 300
Denver, CO  80203
jhutchings@dillanddill.com
*Attorneys for Plaintiff [pro hac vice]*

Mark W. Gifford, Esq.
Jeffrey C. Brinkerhoff, Esq.
Gifford & Brinkerhoff
243 South Park Street
P.O. Box 2508
Casper, WY 82602
mark@giffordbrinkerhoff.com
jeff@giffordbrinkerhoff.com
*Attorneys for Defendant Dennis R. Lawrence and*
*Agricultural Income and Planning Associates, LLC*

David F. DeFazio, Esq.
DeFazio Law Office, LLC
172 Center Street, Suite 203
P.O. Box 4877
Jackson, WY  83001
david@defaziolaw.com
*Attorneys for Defendants CapWest Securities, Inc.; Colorado Capital*
*Holdings, LLC; Capstone Financial Group, Inc.; Randall Pope;*
*Nathan Glossi; Dale Keith Hall; and David Leon Smiths*

Jason M. Tangeman, Esq.
Nicholas & Tangeman, LLC

170 North 5th Street
P.O. Box 0928
Laramie, WY  80273-0928
jtangeman@wyolegal.com
*Attorneys for Defendant Steve Holmes*

Charles W. Gameros, Jr., P.C.
Hoge & Gameros, L.L.P.
4514 Cole Avenue, Suite 1500
Dallas, TX  75205
bgameros@legaltexas.com
*Attorneys for Defendant Steve Holmes [pro hac vice]*

Thomas N. Long, Esq.
Laura Jean Jackson
Long Reimer Winegar Beppler LLP
2120 Carey Avenue, Suite 300
P.O. Box 87
Cheyenne, WY  82003
tlong@lrw-law.com
ljackson@lrw-law.com
*Attorneys for Defendant Richard Hancock*

K. Lawson Pedigo, Esq.
Miller Keffer Bullock & Pedigo
8401 N. Central Expressway, Suite 630
Dallas, TX  75225
KLPedigo@mkp-law.net
*Attorneys for Defendant Richard Hancock [pro hac vice]*

                                        *Traci L. Van Pelt*
                              Traci L. Van Pelt