Kim D. Cannon (Wyoming State Bar #5-1401)
J. Mark Stewart (Wyoming State Bar #6-4121)
Davis & Cannon, LLP
40 South Main
P.O. Box 728
Sheridan, WY 82801
Telephone:     (307) 672-7491
Facsimile:     (307) 672-8955
cannon@davisandcannon.com
mark@davisandcannonchey.com

John A Hutchings (*pro hac vice*)
Dill Dill Carr Stonbraker & Hutchings, P.C.
455 Sherman Street, Suite 300
Denver, CO 80203
Phone:     (303)777-3737
Facsimile:     (303) 777-3823
jhutchings@dillanddill.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| NAOMI L. MILES REVOCABLE TRUST, | ) | |
| NAOMI L. MILES, TRUSTEE, and CHARLES | ) | |
| W. MILES, JR. TRUST, NAOMI L. MILES | ) | |
| TRUSTEE, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 10-CV-0034-D |
| v. | ) | |
| | ) | |
| DENNIS R. LAWRENCE, et al. | ) | |
| | ) | |
| Defendants. | ) | |

---

**PLAINTIFFS' RESPONSE TO DEFENDANT SECORE & WALLER, LLP's MOTION
TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(6)**

---

Provident Royalties, LLC ("Provident") engaged in a wide spread fraudulent Ponzi

scheme from approximately September of 2006 through January of 2009 pursuant to which,

through 21 separate entities preferred stock was sold in private placements raising approximately $485,000,000 from approximately 7,700 investors nationwide, including the Plaintiffs in this case (Complaint, ¶ 40; also see Complaint in the case of *Securities and Exchange Commission v. Provident Royalties, LLC, et al*, Case No. 09-cv-1238-L, United States District Court for the Northern District of Texas (the "Provident Litigation Complaint"), Exhibit A to Plaintiffs' Response to Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(2) of Secore & Waller, LLP, Doc. 91-2). According to the private placement memoranda of the 21 Provident offerings, funds raised in the offerings were to be used for the acquisition and development of specific oil and gas properties and investors in each of the 21 separate offerings were to receive a return from the assets acquired for that offering (Complaint, ¶ 40). Revenue from what little oil and gas exploration and development activities were conducted by the Provident entities was insufficient to pay promised returns. When this occurred, Provident used substantial amounts of money from each of its subsequent offerings to pay promised returns to investors in prior offerings rather than for the acquisition and development of oil and gas properties and exploration and development activities as represented in the private placement memoranda, thus operating a fraudulent Ponzi scheme (Complaint, ¶ 40; also see Provident Litigation Complaint, Doc. 91-2). Through the private placement memoranda, investors, including the Plaintiffs in this case, that purchased preferred stock in the various Provident offerings were told in the private placement memoranda that eighty-six percent of the funds would be placed in oil and gas investments. This representation was false in that significant amounts of investment funds, including those of the Plaintiffs, were used to pay returns to investors in prior Provident offerings (Complaint, ¶ 41). Investors, including the Plaintiffs, were not told that their funds would be comingled with funds

2

derived from other Provident offerings when, in fact, such funds were comingled among numerous of the offerings conducted by Provident (Complaint, ¶ 42).

As a result of the blatant massive fraud perpetrated by Provident through untrue statements of material fact and omission to state material facts contained in the private placement memoranda, on July 1, 2009, the United States Securities and Exchange Commission instituted the *Provident* litigation.  On July 2, 2009, the United States District Court for the Northern District of Texas in the *Provident* litigation entered an Order Granting Temporary Restraining Order, Appointing Receiver, Freezing Assets, Staying Litigation, Prohibiting the Destruction of Documents, and Accelerating Discovery (see **Exhibit A** attached to this Response) (the "Order Appointing Receiver").  Pursuant to paragraph 33 of the Order Appointing Receiver, creditors and all other persons, including the Plaintiffs, are enjoined from commencing any litigation against any of the Defendants in the *Provident* litigation.  Secore & Waller, LLP ("Secore & Waller") often states in its Memorandum in support of its Rule 12(b)(6) Motion that Plaintiffs have failed to bring claims against Provident or any of the entities in which Plaintiffs purchased preferred stock, inferring that Plaintiffs have failed to pursue parties other than Secore & Waller for their losses or have unfairly singled out Secore & Waller.  Plaintiffs believe Secore & Waller and its counsel are well aware of the Order Appointing Receiver and its injunction prohibiting litigation against the Defendants in the *Provident* litigation and simply omitted to advise the Court of such facts, rendering statements made regarding Plaintiffs' failure to bring claims against Provident and its related entities misleading.  A Court may properly take judicial notice of the Order Appointing Receiver as well as the Complaint in the *Provident* litigation (Doc. 91-2).  *Tal v. Hogan*, 453 F.3d 1244, n. 24 (10th Cir. 2006).

Most fraudulent schemes involve various participants, each of whom play a material role in the fraudulent scheme.  In most of these instances, but for the combined action of all the participants, the fraudulent scheme could not have been successfully perpetrated.  Such is the case with respect to Provident's fraudulent Ponzi scheme.  By its own admission, Secore & Waller was a material and active participant in Provident's fraudulent Ponzi scheme and but for its participation the fraud could not have been so successfully perpetrated.  In response to Secore & Waller's 12(b)(2) Motion to Dismiss, Plaintiffs filed an Affidavit of J. Mark Stewart with attached Exhibits (Doc. 93-2 through 93-6), and an Affidavit of Kimberlene Wakefield, legal assistant to J. Mark Stewart, with attached Exhibits (Doc. 93-7 through 93-17).  The attachment to the Affidavits of J. Mark Stewart and Kimberlene Wakefield are public records of which the Court may properly take judicial notice.  *Tal v. Hogan*, 453 F.3d at n. 24.

In support of Secore & Waller's Motion to Dismiss pursuant to Rule 12(b)(2), it filed an Affidavit of Joan Waller (Doc. 72-2, pp. 4-9).  Through the Affidavit of Joan Waller, Secore & Waller admits the following involvement in Provident's fraudulent Ponzi scheme:

1.      Secore & Waller represented Provident from September of 2006 to May of 2009, which spanned the entire length of the Provident fraudulent Ponzi scheme (Complaint, ¶ 40; also see Provident Litigation Complaint, ¶¶ 18-47, Doc. 91-2; Affidavit of Joan Waller, ¶ 18).

2.      Secore & Waller incorporated at least the 21 entities which engaged in and perpetuated Provident's fraudulent Ponzi scheme (Affidavit of Joan Waller, ¶ 18, Doc. 72-2; Affidavit of J. Mark Stewart, ¶ 6, Exhibits B and C, Doc. 93-2, 93-4 and 93-5).

3.      Secore & Waller prepared private placement memoranda for the Provident entities engaged in the fraudulent Ponzi scheme (Affidavit of Joan Waller, ¶ 18, Doc. 72-2).

4.      Secore & Waller drafted the Form D, Notice of Sale of Securities Pursuant to Regulation D, Section 4(6) and/or Uniform Limited Offering Exemption ("Form D") (Affidavit of Joan Waller, ¶ 23, Doc. 72-2).

5.      Secore & Waller prepared cover letters for the filing of Form D's in the State of Wyoming, issued checks for the filing of Form D's in the State of Wyoming, and transmitted the Form D's for filing in the State of Wyoming for the sale of preferred stock in the State of Wyoming in the Provident fraudulent Ponzi scheme (Affidavit of Joan Waller, ¶ 23, Doc. 72-2; also see Affidavit of Kimberlene Wakefield with attached Exhibits A through J, Doc. 93-7 through 17).

In addition to the direct admission of Secore & Waller of its involvement in the Provident fraudulent Ponzi scheme, the allegations of the Complaint, plus documents of which this Court may properly take judicial notice, allege and/or show the following:

1.      Twenty separate Form D's were filed with the United States Securities and Exchange Commission as part of Provident's fraudulent Ponzi scheme (Exhibit D to Affidavit of J. Mark Stewart, Doc. 93-2, Doc. 93-6).  Secore & Waller admits it prepared Form D's (Affidavit of Joan Waller, ¶ 23) and filed them with the State of Wyoming and therefore it is reasonable to presume or infer that Secore & Waller prepared and filed with the United States Securities and Exchange Commission the 20 Form D's identified on Exhibit D to the Affidavit of J. Mark Stewart.

2.      Each Form D identifies the amount of securities sold by the issuer in each state and the number of investors to whom the securities were sold in each state.  For example, see Form D included as part of Exhibit A to the Affidavit of Kimberlene Wakefield (Doc. 93-8).

Secore & Waller thus knew the nature and extent of Provident's offerings which ultimately aggregated almost a half billion dollars with sales nationwide to approximately 7,700 investors, including the Plaintiffs.

3.      As drafters of the private placement memoranda used in the Provident fraudulent Ponzi scheme, Secore & Waller knew that the memoranda were being distributed nationwide as part of the raising of almost a half billion dollars over more than a two year period (Complaint, ¶¶ 40, 121, 122).

4.      Secore & Waller knew investors such as the Plaintiffs would rely upon the private placement memoranda which, by its own admission, it prepared (Complaint, ¶ 122).

5.      Secore & Waller knew that with respect to any Provident entities for which it prepared a private placement memorandum, there were no audited financial statements or other reliable financial results of the performance of prior Provident entity offerings and failed to disclose such facts in the private placement memoranda (Complaint, ¶¶ 123, 124).

The private placement memoranda were an integral part of the fraudulent Ponzi scheme perpetrated by Provident as they presented a picture of a legitimate business enterprise purporting to disclose all material facts to the investors.  But for this presentation of a legitimate business enterprise in the private placement memoranda, Provident could not have so successfully perpetrated its fraudulent Ponzi scheme pursuant to which it raised almost half a billion dollars from 7, 700 investors, all of which was known by Secore & Waller (Complaint, ¶ 125).

In an effort to avoid responsibility for its actions and conduct, Secore & Waller raises numerous arguments pursuant to which it requests that this Court dismiss Plaintiffs' claims

against it thus allowing it to enjoy the material financial gains received from its assistance to Provident in the fraudulent Ponzi scheme and preclude Plaintiffs from a remedy against a party which bears responsibility for the Plaintiffs' losses.   At the core of numerous of Secore & Waller's arguments is the untrue statement that Plaintiffs base their claims of liability against Secore & Waller upon the allegation that Secore & Waller failed to disclose that the entities in which Plaintiffs purchased preferred stock did not have audited financial statements.   From such untrue statement, Secore & Waller argues that as each entity was newly formed, audited financial statements would have been meaningless, presumably arguing that such fact was not material. However, that is not Plaintiffs' allegations.   The actual allegations are as follows:

1.      Secore & Waller knew, or was reckless in not knowing, that neither Provident nor any of the entities for which Secore & Waller prepared private placement memoranda had audited financial statements.   As attorneys, who hold themselves out as experts in the field of transactional securities, Secore & Waller knew, or was reckless in not knowing, that <u>one of the risks of not having audited financial statements of the promoter and previous entity offerings</u> by the promoter is the comingling of money, improper use of proceeds, and the possible operation of a fraudulent Ponzi scheme (Complaint, ¶ 123)[1].

2.      Secore & Waller employed a device, scheme and/or artifice to defraud the Plaintiffs in their purchase of SR-4 and SR-12 preferred stock, including but not limited to;

---

[1] Secore & Waller incorrectly states that the SR-12 private placement memorandum contains information on prior Provident offerings.  They fail to state what such information is or where it can be found in the SR-12 private placement memorandum.  It is undisputed neither the SR-4 nor the SR-12 private placement memoranda contained any reliable or accurate financial information of prior Provident offerings.

a.   The <u>failure to conduct a due diligence investigation of Provident and those</u> <u>offerings which preceded SR-4 and SR-12</u>, including the <u>failure to obtain audited financial</u> <u>statements of Provident and each of the entities preceding SR-4 and SR-12</u> or other accurate and reliable financial information upon such entities;

b.   The <u>failure to disclose</u> to purchasers of preferred stock in SR-4 and SR-12, including the Plaintiffs, <u>the risk of the lack of audited financial statements of Provident and those</u> <u>offerings preceding SR-4 and SR12</u>,. (Complaint, ¶ 143).

3.     Secore & Waller omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in the offer and sale of the preferred stock of SR-4 and SR-12 to the Trusts, including but not limited to the following:  The <u>risks of lack of audited financial statements of Provident and</u> the offerings of preferred stock <u>in entities preceding SR-4 and SR-12</u> (Complaint, ¶ 145).

4.     Secore & Waller engaged in acts, practices and courses of business which operated as a fraud and deceit upon the Plaintiffs in connection with their purchase of the preferred stock of SR-4 and SR-12, including but not limited to that Secore & Waller failed to conduct a due diligence investigation including but not limited to, demanding or requesting audited financial statements or other adequate or reliable financial information which would have revealed the true financial picture of Provident and the various offerings which it conducted; (Complaint, ¶ 146).

The gravamen of Plaintiffs' allegations against Secore & Waller is not, as stated by Secore & Waller, the failure to include disclosure of lack of audited financial statements of the entity identified in each separate private placement memorandum, but the failure of Secore &

Waller as purported competent transactional securities attorneys in either not obtaining audited financial statements or other reliable financial information <u>on the promoter and prior offerings of Provident</u> in which Secore & Waller participated as attorneys or of even disclosing the risks associated with not obtaining or having audited financial statements or other reliable financial information on the promoter and prior offerings.  As further alleged in Plaintiffs' Complaint, competent transactional securities attorneys would have seen this as a clear warning of a possible fraudulent Ponzi scheme (Complaint, ¶ 124), as attorneys knowing that numerous investors, such as the Plaintiffs, would rely upon the thoroughness and accuracy of the disclosures in the private placement memoranda, would have included such disclosure (Complaint, ¶¶  122-124), and the private placement memoranda were an integral part of the fraudulent Ponzi scheme of Provident (Complaint, ¶ 125).

In addition to the foregoing allegations of Secore & Waller's wrongful conduct, the Charles W. Miles, Jr. Trust, Naomi L. Miles Trustee (the "Credit Trust") alleges it received offering material on the Provident preferred stock investments between April 20, 2007 and July 22, 2007 (Complaint, ¶ 80), and on July 2, 2007 purchased $100,000 of SR-4 preferred stock (Complaint, ¶¶ 62 and 83).  The Naomi L. Miles Revocable Trust, Naomi L. Miles, Trustee (the "Miles Trust") similarly alleges receipt of Provident preferred stock offering material between April 20, 2007 and July 22, 2007 (Complaint, ¶ 80), and that on July 2, 2007 it purchased $50,000 of SR-4 preferred stock  (Complaint, ¶¶ 61 and 83).  The Miles Trust further alleges on or about June of 2008 its receipt of a private placement memorandum for an investment in SR-12 preferred stock (Complaint, ¶ 98) and its purchase on June 16, 2008 of an aggregate of $80,000 of SR-12 preferred stock (Complaint, ¶¶ 61 and 99).

Plaintiffs have brought the following claims against Secore & Waller:

1.      First Claim for Relief for violation of 15 U.S.C. § 78j(b) ("Section 10(b)") and 17 C.F.R. § 240.10b-5 ("Rule 10b-5") (Complaint, ¶ 143-146, 163 and 164);

2.      Fifth Claim for Relief for violation of W.S. § 4-122(a)(ii) of the Wyoming Securities Act;

3.      Eighth Claim for Relief for common law fraud; and

4.      Tenth Claim for Relief for negligence.

The Complaint in this case, those documents of which this Court may properly take judicial notice, and application of the law of the Tenth Circuit rather than law of other Circuits cited by Secore & Waller, which is inapplicable in this Circuit, demonstrate that Plaintiffs have adequately stated claims for relief against Secore & Waller.  Accordingly, this Court should deny Secore & Waller's Motion to Dismiss Pursuant to Rule 12(b)(6).

## **ARGUMENT**

### **The Fed.R.Civ.P. 12(b)(6) Plausibility Standard**

In Plaintiffs' Response to Defendant Steve Holmes' Motion to Dismiss (Doc. 48, pp. 12-13) and in Plaintiffs' Response to Defendant Richard Hancock's Motion for Judgment on the Pleadings (Doc. 88, pp. 6-8), Plaintiffs have set forth the applicable standard to be utilized by a Court in determining Motions to Dismiss under Rule 12(b)(6).  Rather than restate in their entirety the standard, and in accordance with this Court's Order of July 28, 2010, Plaintiffs incorporate by reference herein as if fully set forth herein the full discussions contained in the section entitled, "Plaintiffs' Complaint Passes the Plausibility Test" in such Responses.  Further, the Plaintiffs believe that this Court is well versed in the applicable standard to be applied and

does not need another statement of such standard.

**Plaintiffs State a Claim Under Section 10(b) Against Secore & Waller**

1. **The Purpose of Federal Securities Laws is the Protection of Investors**

The major objective of federal securities laws is the protection of the investing public. *SEC v. Capital Gains Research Bureau*, 375 U.S. 180, 195, 85 S.Ct. 275, 284 (1963). Congress' remedial purpose in enacting federal securities laws is to protect investors by compelling full and fair disclosure relative to the issuance of any type of securities. *Landreth Timber Company v. Landreth,* 471 U.S. 681, 687, 105 S.Ct. 2297, 2302 (1985). The fundamental purpose of securities laws is protection of the investor from the sale of worthless securities through misrepresentation. *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 940 F.2d 564, 580 (10th Cir. 1991). The securities laws achieve this purpose by two means: (1) requiring disclosure to investors of relevant accurate information upon which to base an investment decision; and (2) providing meaningful remedies for investors when the anti-fraud provisions of the laws have been violated. *Id.*

Section 10(b) is one of the laws enacted to remedy securities law violations. A Section 10(b) action can be brought by a purchaser or seller of any security against any person who has used any manipulative or deceptive device or contrivance in connection with the purchase or sale of a security. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382, 103 S.Ct. 683, 687 (1983). Although Section 10(b) carries a certain pleading and proof requirement, it should always be remembered that its purpose, as well as the purpose of all of the federal securities laws, is the protection of investors from manipulative or deceptive acts and practices.

2. **The Elements of a Section 10(b) Claim**

It is well recognized that in accordance with the express language of Section 10(b) and Rule 10b-5, that not only material misrepresentations and omissions by a Defendant form the basis for an action under Section 10(b) and Rule 10b-5, but the commission of a manipulative or deceptive act or practice, in the absence of material misrepresentations and omissions, can properly be the basis for a Section 10(b) and Rule 10b-5 claim. *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177, 14 S.Ct. 1439 (1994). Rule 10b-5(a) and (c) encompass claims for what is known as "scheme liability" which does not require material misrepresentation or omission to state a material fact. To state a claim under Rule 10b-5(a) or (c), as well as under Section 10(b), a plaintiff must allege that a defendant: (1) committed a manipulative or deceptive act; (2) in furtherance of the alleged scheme to defraud; (3) scienter; and (4) reliance. *In re Qwest Communications International, Inc. Securities Litigation*, 378 F.Supp.2d 1130, 1143 (D.Colo. 2005). Thus, Plaintiffs neither are required to plead nor prove that Secore & Waller made an untrue statement of material fact or omitted to disclose a material fact to adequately plead a claim for liability under Section 10(b) and Rule 10b-5.

3.      **The Second Circuit's Attribution Rule is not Applicable in the Tenth Circuit**

Citing Second Circuit Law, and in particular *Wright v. Ernst & Young, LLP*, 152 F.3d 169 (2nd Cir. 1998) and *Pacific Inv. Management Co. LLC v. Mayer Brown, LLP*, 603 F.3d 144 (2nd Cir. 2010), Secore & Waller argues that a secondary actor cannot incur primary liability under Section 10(b) for a statement not attributed to that actor at the time of its dissemination. In response to an identical argument raised by Defendants in *Securities and Exchange Commission v. Wolfson*, 539 F.3d 1249, 1259 (10th Cir. 2008), the Court stated:

> To begin with, defendant's argument is without support in the case law in this Circuit. We have never adopted an attribution requirement in a private securities

case, let alone in a commission enforcement action.

Secore & Waller does quote from *Wolfson* (Memorandum in Support of Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6), p. 11, Doc. 110, p. 16);  however, the quotation is taken out of context.  Part of the quotation is the Tenth Circuit quoting from *Wright*, explaining the attribution rule in the Second Circuit, not adopting it as suggested by Secore & Waller's use of the quotation.

 *Wolfson* represents a recent statement of Tenth Circuit law regarding secondary actor's liability.  In *Wolfson*, individual Defendant Marple worked as a non-employee consultant to a public company.  Marple prepared certain disclosure documents which were then publicly filed with the United States Securities and Exchange Commission.  The documents contained material misrepresentations and omissions.  Marple defended claiming the SEC alleged only the <u>company</u> made the material misstatements and omissions not that he, as an individual made such statements and omissions, and therefore he was a mere secondary actor subject at most to liability as an aider and abettor.  In other words, Marple argued that the misrepresentations and omissions were not "attributable" at the time they were made to him.  The Tenth Circuit first dealt with the issue in *Anixter v. Home-Stake Prod. Company*, 77 F.3d 1215 (10th Circ. 1996) when, after *Central Bank* determined there was no aider and abettor liability, the Tenth Circuit determined that an accountant who prepared many of the offending documents and knew, or should have known, that the documents would reach investors could be deemed a primary violator under Section 10(b).  *Id*. at 1226-27.

 In response to Marple's defense, in *Wolfson*, the Tenth Circuit considered three different approaches taken by different Circuits.  One approach considered was the "bright-line" test of

13

the Second Circuit is the test Secore & Waller argues to this Court.  Under the Second Circuit bright-line test, a secondary actor is only primarily liable for securities fraud if the actor makes a material misrepresentation or omission and the relevant misrepresentation is attributed to the secondary actor at the time it is disseminated to investors.  *Wright v. Ernst & Young, LLP*, 152 F.3d at 175.  In contrast to the Second Circuit's bright-line theory for primary liability, the Ninth Circuit has adopted a "substantial participation test" by which a secondary actor can be held liable as a primary violator of Section 10(b) if the actor "substantially participates" or is "intricately involved" in making a material misstatement or omission.  *In re Software Toolworks, Inc. Securities Litigation*, 50 F.3d 615, 628 n. 3 (9th Cir. 1994).  In *Wolfson*, the Tenth Circuit declined to follow either the bright-line test of the Second Circuit or the substantial participation test of the Ninth Circuit.  Ultimately, the Tenth Circuit settled on a standard between the Second Circuit's bright-line test and the Ninth Circuit's substantial participation test.  The Tenth Circuit held the following:

> [F]10 hired Marple for the very purpose of preparing the relevant SEC filings based upon his prior financial reporting experience, and he well knew that those documents would be distributed to the public and available to investors.  That the filings were issued in F10's name, and that Marple himself did not sign, certify or physically file the documents, is not dispositive.  The relevant question is only whether he can fairly be said to have caused F10 to make the relevant statements and whether he knew or should have known that the statements would reach investors . . . .  Thus we hold that because Marple caused the misstatements and omissions to be made, and he knew the statements were calculated to reach investors, defendants can properly be held liable under § 10(b) . . . .

*SEC v. Wolfson*, 539 F.3d at 1261.  In reaching this decision, the Tenth Circuit noted that there is no requirement that the alleged violator directly communicate misrepresentations to the plaintiffs for primary liability to attach.  *Id. Anixter v. Home-Stake Prod. Co.*, 77 F.3d at 1226.  Concluding, the Tenth Circuit stated:

> Under the rule articulated today, a defendant must do more than substantially participate in creating an actual misstatement (or omission); he must instead be so involved in creating or communicating the offending misstatement (or omission) that he can fairly be said to have caused it to be made.

*SEC v. Wolfson*, 539 F.3d at n. 18.

Secore & Waller admits it was the drafter, the creator of the private placement memoranda for all of the Provident offerings (Affidavit of Joan Waller, ¶ 18).  Plaintiffs' claim against not only Secore & Waller but all Defendants related to SR-4 and SR-12 is not that of a single offering, such as SR-4 or SR-12, in which misrepresentations or omissions occurred, but that of a large fraudulent Ponzi scheme consisting of 21 separate offerings which included SR-4 and SR-12, spanned over two years, and raised approximately half a billion dollars from 7,700 individuals.  Secore & Waller:

1.      Incorporated all of the entities involved in the fraudulent Ponzi scheme;

2.      Drafted all of the private placement memoranda for all of the offerings involved in the fraudulent Ponzi scheme; and

3.      Prepared and filed all of the Form D's for all of the offerings involved in the fraudulent Ponzi scheme, thereby avoiding the additional disclosures registration would have required.

The preparation and filing of the Form D's was a significant act in perpetuating the fraudulent Ponzi scheme.  (See discussion below.)

Had there been but one offering, such as SR-12, perhaps an argument by Secore & Waller that it cannot be charged with creating or communicating the misstatements may have some merit.  However, in the present case it defies credibility to suggest that the level of participation of Secore & Waller in Provident's overall fraudulent Ponzi scheme, consisting of

21 separate offerings including SR-4 and SR-12, does not rise to the level of creating or communicating the misstatements (or omissions) and causing the material misrepresentations and omissions to be made.  Furthermore, the filing of the Form D's was not a "mere formality" (as stated by Secore & Waller) but was necessary to purportedly exempt from the registration requirements of federal and state securities laws, the preferred stock sold to the Plaintiffs and other investors by the Provident entities.  The avoidance of registration is significant because registration of the securities under federal and state securities laws would have required audited financial statements (17 C.F.R. § 210.3-01, *et seq.*, promulgated under 13 U.S.C. § 77g) which would have easily revealed at an early stage the fraudulent Ponzi scheme.

Plaintiffs have also alleged what is known as "scheme liability" against Secore & Waller based upon its participation in Provident's fraudulent Ponzi scheme.  The concept of "attribution" has not been determined to be applicable to scheme liability allegations.  Even within the Second Circuit, the relevant question, among others, with respect to "scheme liability" is not attribution, but reliance.  *Pacific Inv. Management Co. LLC v. Mayer Brown, LLP*, 603 F.3d at 159.  Thus, Plaintiffs' claims against Secore & Waller are not subject to dismissal under the Second Circuit's attribution rule.

**4.      Plaintiffs Have Adequately Alleged Scienter Against Secore & Waller**

15 U.S.C. § 78u-4(b)(2) requires that in a private action arising under the Securities and Exchange Act of 1934, which includes Section 10(b), the plaintiff must allege particular facts giving rise to a strong inference that the defendant acted with the required state of mind. Scienter is the required state of mind and has been defined by the United States Supreme Court to mean a mental state embracing an intent to deceive, manipulate or defraud.  *Ernst & Ernst v.*

*Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375 n. 12 (1976).   The United States Supreme Court in *Ernst & Ernst* did not determine whether recklessness may be sufficient for establishing scienter. *Id.*   The Tenth Circuit recognizes recklessness satisfies the scienter requirement for a violation of Section 10(b) and Rule 10b-5.  *Hackbart v. Holmes*, 685 F.2d 114, 117 (1982).   Recklessness is defined as conduct that is an extreme departure from the standards of ordinary care and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.  *Anixter v. Home-Stake Production Company*, 77 F.3d at 1232.   In *City of Philadelphia v. Fleming Companies, Inc.* 264 F. 3d 1245 (10th Cir. 2001), the Tenth Circuit reaffirmed the recklessness standard as sufficient to establish scienter and specified the requirements for pleading recklessness under the Private Securities Litigation Reform Act ("PSLRA").   Under the standard established by the PSLRA, a plaintiff must plead facts raising a strong inference of intentional conduct or reckless conduct that is an extreme departure from the standards of ordinary care which presents a danger of misleading buyers or sellers that is either known to the defendant or so obvious that the actor must have been aware of it.  *Id.* at 1259-60.

In *Tellabs v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007), the United States Supreme Court clarified the standard by which Courts should determine whether a plaintiff has adequately plead the inference of scienter.   Initially, the Court noted that to qualify as "strong" the inference of scienter must be more than merely plausible or reasonable, but must be cogent and at least as compelling as any opposing inference of non-fraudulent conduct.  *Id.*   551 U.S. at 314, 127 S. Ct. at 2504-05.  *Webster's Third New International Dictionary*, 1158 (1986) defines "inference" as "the act of passing from one or

more propositions . . . considered as true to another the truth of which is believed to follow from the former". The Court in *Tellabs* established three guidelines to be followed where a District Court is faced with a Rule 12(b)(6) motion to dismiss a Section 10(b) claim for failure to adequately plead scienter. The first is that the Court must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true. *Tellabs*, 551 U.S. at 322, 127 S. Ct. at 2509. Secondly, the District Court must consider the complaint in its entirety as well as other sources ordinarily examined when ruling on 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference and matters of which the Court may take judicial notice. The inquiry is then whether all facts alleged, <u>taken collectively</u>, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets this standard. *Id.*, 551 U.S. at 322-23, 127 S. Ct. at 2509. Finally, in determining whether the pleaded facts give rise to a "strong" inference of scienter, the Court must take into account plausible opposing inferences. *Id.*, 551 U.S. at 323, 127 S. Ct. at 2509-10.

The strength of the inference cannot be decided in a vacuum. The inquiry is inherently comparative. To determine whether a plaintiff has alleged facts that give rise to the required strong inference of scienter, the Court must consider plausible non-culpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff. The inference that the defendant acted with scienter need not be irrefutable or a smoking gun or even the most plausible of competing inferences. *Id.*, 551 U.S. at 323-24, 127 S. Ct. at 2510. A complaint will survive if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged. *Id.*, 551 U.S. at 324, 127 S. Ct. at

2510. In sum, when the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference. *Id*., 551 U.S. at 326, 127 S. Ct. at 2511. Subsequent to *Tellabs*, the Second Circuit in *ECA v. JP Morgan Chase Company*, 553 F.3 187, 199 (2nd Cir. 2009) recognized at least four circumstances which may give rise to a strong inference of the requisite scienter. These circumstances are where the complaint sufficiently alleges that the defendants: (1) benefitted in a concrete and personal way from the purported fraud, (2) engaged in deliberate illegal behavior, (3) knew facts and had access to information suggesting that their public statements were not accurate, and (4) failed to check information they had a duty to monitor.

The Plaintiffs' numerous factual allegations of the conduct of Secore & Waller create a strong inference that it, at a minimum, acted with recklessness, if not with actual intent to deceive, manipulate, and defraud. Plaintiffs allege Secore & Waller prepared the private placement memoranda of SR-4 and SR-12 and related documents concerning those entities as well as all 21 separate entities involved in the Provident fraudulent Ponzi scheme (Complaint, ¶¶ 28, 121). This allegation was confirmed in the Affidavit of Joan Waller (Affidavit of Joan Waller, ¶ 18). Further, Joan Waller confirmed that not only did Secore & Waller prepare all the private placement memoranda, it incorporated each of the entities involved in the Provident fraudulent Ponzi scheme (Affidavit of Joan Waller, ¶ 18) and filed Form D's in the State of Wyoming (Affidavit of Joan Waller, ¶ 23), and inferentially filed Form D's on behalf of Provident's fraudulent Ponzi scheme in numerous other states and with the Securities and Exchange Commission. Plaintiffs allege the Provident fraudulent Ponzi scheme (Complaint, ¶¶ 40 through 44). The Court may properly take judicial notice of the Provident Litigation

Complaint (Doc. 91-2). *Tal v. Hogan*, 453 F.3d at, n. 24. Plaintiffs allege Secore & Waller knew that the private placement memoranda were to be distributed nationwide to numerous potential investors, including Plaintiffs (Complaint, ¶ 122). Plaintiffs allege Secore & Waller owed a duty to those who would forseeably rely upon the private placement memoranda in making significant investment decisions to conduct a reasonable and prudent due diligence investigation into the accuracy of the information contained in the private placement memoranda and to disclose the material risks of the offering (Complaint, ¶ 122). Plaintiffs further allege Secore & Waller either knew, or was reckless in not knowing, <u>the risks of not having audited</u> <u>financial statements of the promoter and previous entity offerings of the promoter</u> (Complaint, ¶ 123). Plaintiffs allege Secore & Waller were attorneys that held themselves out as experts in the field of transactional securities work (Complaint, ¶ 123). Although Joan Waller, a founding partner of Secore & Waller (Affidavit of Joan Waller, ¶ 2), filed an extensive Affidavit in this case, she did not deny in any way that neither she nor Secore & Waller were experts in the field of transactional securities. Plaintiffs allege Secore & Waller knew, or was reckless in not knowing, that one of the risks of not having audited financial statements of a promoter and of previous entity offerings by a promoter is the comingling of money, improper use of proceeds, and the possible operation of a fraudulent Ponzi scheme (Complaint, ¶ 123). Plaintiffs further allege that competent transactional securities attorneys, acting reasonably and prudently, would have recognized the existence of the significant risk of the comingling of money in numerous consecutive entity offerings, such as conducted by Provident, and for which Secore & Waller did all the legal work (Complaint, ¶ 124). As competent transactional securities attorneys, Secore & Waller either knew or was reckless in its failure to recognize such risks and include a disclosure

thereof in the private placement memoranda (Complaint, ¶ 124).   The drafting of the private placement memoranda was an integral part of the fraudulent Ponzi scheme which served to create and present a picture of a legitimate business enterprise rather than a fraudulent Ponzi scheme (Complaint, ¶125).

The foregoing are specific factual allegations not conclusions.   The allegations, <u>accepted as true</u> and <u>taken collectively</u>, show that SR-4 and SR-12 were not isolated offerings but part of a two and one-half year fraudulent Ponzi scheme involving 21 separate offerings for which Secore & Waller performed all of the legal work related to such offerings.   Based on the long ongoing representation of Secore & Waller, it had access to information which should have suggested that statements made in the private placement memoranda were not accurate and that material omissions existed.   Further, based upon the material involvement of Secore & Waller in the fraudulent offerings and its access to information, it had a duty to check information to assure that the representations contained in the private placement memoranda, which it knew would be disseminated to and relied upon by investors, were accurate.   When the allegations of the Complaint are <u>accepted as true</u> and <u>taken collectively</u>, rather than in isolation, the inference of scienter is at least as strong as any opposing inference and, thus, Plaintiffs have adequately pled scienter.   Allegation of a pervasive and long standing fraud, such as alleged by Plaintiffs, supports a strong inference of scienter under the PSLRA.   *In re Qwest Communications International, Inc. Securities Litigation*, 378 F.Supp.2d at 1147.

Plaintiffs allege that Secore & Waller failed to perform a reasonable and prudent due diligence investigation into the accuracy and completeness of the information contained in the private placement memoranda (Complaint, ¶ 122).   Secore & Waller asserts that this amounts to

mere negligence and thus cannot support a claim under Section 10(b).  However, the failure to conduct an adequate due diligence investigation, when a duty to do so exists, does support the claim for liability under Section 10(b).  See, *In re WorldCom Securities Litigation*, 346 F.Supp.2d 628, 672 (S.D.N.Y. 2004) (An underwriter may not blindly rely upon information provided to it where "red flags" arise, but must particularly investigate such warnings.)  *Everest Securities, Inc. v. Securities and Exchange Commission*, 116 F.3d 1235, 1239 (8th Cir. 1997) (A broker-dealer's due diligence investigation which was found cursory and thus insufficient has been held to satisfy the scienter recklessness standard.)  In view of Secore & Waller's substantial two and a half year involvement with the Provident fraudulent offerings and knowledge of the widespread dissemination of the private placement memoranda which it created and drafted, Secore & Waller had a due diligence investigation duty and, as Plaintiffs have alleged, failed to perform it.  This duty, together with Plaintiffs' allegations of the manner in which Secore & Waller failed to perform its due diligence investigation, support the recklessness standard to establish scienter.

5.     **Plaintiffs Properly Alleged Reliance**

Contrary to the assertions of Secore & Waller, Plaintiffs have alleged receipt of the private placement memoranda of both SR-4 (Complaint, ¶¶ 79, 80, 85.c.) and SR-12 (Complaint, ¶ 98).  The Complaint alleges misrepresentations contained in the private placement memoranda (Complaint, ¶¶ 41, 42), that Secore & Waller failed to disclose in the private placement memoranda the risks associated with the lack of audited financial statements of Provident and those offerings preceding SR-4 and SR-12 (Complaint, ¶¶ 143.b., 143.c. and 145), that Secore & Waller through the private placement memoranda made misrepresentations of material fact

(Complaint, ¶ 144), that Secore & Waller omitted to disclose material facts including that substantial amounts of the offering proceeds would be used for purposes other than as described in the private placement memoranda (Complaint, ¶ 145.c.), and that Secore & Waller engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the Plaintiffs in its preparation of the private placement memoranda (Complaint, ¶ 146.a.). Plaintiffs have alleged a loss as a direct and proximate result of the described conduct of all of the Defendants involved in the Provident fraudulent Ponzi scheme, including that of Secore & Waller (Complaint, ¶ 164). Finally, and in particular, the Plaintiffs have alleged they relied upon the representations of the Defendants, which include the representations contained in the private placement memoranda drafted and created by Secore & Waller, in their purchase of SR-4 and SR-12 (Complaint, ¶ 163).

In certain circumstances, proof of reliance, and thus allegations of reliance, is not necessary. *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 152-53, 92 S.Ct. 1456, 1471-72, 31 L.Ed.2d 741 (1972). *Affiliated Ute* distinguished the three subparagraphs of Rule 10b-5 pointing out that the first and third subparagraphs are not restricted to the misstatement or omission of a material fact but provide for liability based on a course of business or a device, scheme or artifice that operates as a fraud. Under such circumstances, the investor is relieved of the necessity of proving affirmatively he relied on the prospectus or other representation. Reliance, as an element, is not completely eliminated for if the defendant can prove the plaintiff did not rely then a plaintiff's recovery is barred. *Rifkin v. Crow*, 574 F.2d 256, 262 (5th Cir. 1978). In the present case, Plaintiffs' principal allegations against Secore & Waller are under Rule 10b-5(a) and (c) involving a course of business and a device, scheme or artifice which

operates as a fraud.   The principal allegations relate to omissions and thus there exists a presumption of reliance.  *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. at 153-54, 92 S.Ct. at 1471-72.

**6.      Plaintiffs Have Adequately Alleged Loss Causation**

Secore & Waller acknowledges that loss causation requires only that the misrepresentation, omission or other fraudulent conduct prescribed by Rule 10b-5 "touch" upon the reasons for Plaintiffs' loss.  There can be little question that the reason for Plaintiffs' loss, as alleged in the Complaint, was the operation of the fraudulent Ponzi scheme of Provident.  Plaintiffs have specifically alleged Secore & Waller's role in Provident's fraudulent Ponzi scheme and that conduct clearly "touches" upon the Plaintiffs' loss.  Loss causation is adequately alleged.

For the foregoing reasons, Plaintiffs have adequately stated a claim for relief under Section 10(b) of the Securities and Exchange Act of 1934 and Secore & Waller's Motion to Dismiss such claim should be denied.

**Plaintiffs Adequately State A Claim For Relief Under the Wyoming Securities Act**

Secore & Waller's contention that the same federal authority which applies to Section 10(b) applies to Wyoming Statute § 17-4-122(a)(ii), citing *Ravenswood Inv. Co. v. Bishop Capital Corp.*, 374 F.Supp.2d 1055 (D.Wyo. 2005) is simply incorrect.  In *Ravenswood*, the plaintiffs brought a claim under Wyoming Statute § 17-4-101, which is analogous to Rule 10b-5. However, nowhere does the Court in *Ravenswood* say that the same authority which applies to Section 10(b) claims applies to claims under § 17-4-122(a)(ii).  In fact, there was not a claim made under § 17-4-122(a)(ii) in *Ravenswood*.

The Miles Trust has alleged that Secore & Waller, with respect to SR-12 only, offered and sold securities of SR-12 by means of untrue statements of material fact and omission to state material facts (Complaint, ¶ 189).   In addition, the Miles Trust has alleged Secore & Waller aided and abetted Provident and SR-12 in the offer and sale of preferred stock in SR-12 (Complaint, ¶¶ 190 and 191).   Thus, the Miles Trust has alleged both primary liability and aiding and abetting liability under the Wyoming Securities Act.

Secore & Waller asserts that it cannot be liable under § 17-4-122(a)(ii) because it neither offered nor sold a security.   The definition of offer to sell is found in W.S. § 17-4-113(a)(ix)(B) and means:   ". . . every attempt or offer to dispose of or solicitation of an offer to buy, a security or interest in a security for value; . . . ."   As has been discussed above, Plaintiffs have alleged and Secore & Waller has admitted that it was the creator and drafter of the private placement memorandum which was used to sell the preferred stock of SR-12.   The private placement memorandum was a "solicitation" of an offer to buy preferred stock in SR-12 to the Miles Trust. As the creator of the solicitation document, and giving effect to the broad remedial purposes of securities laws, Secore & Waller's creation of the solicitation document falls within the scope of offer or offer to sell.   Further, as discussed above, Plaintiffs have alleged untrue statements of material fact and omission to state material facts of the private placement memorandum of SR-12.   Accordingly, the Miles Trust has adequately alleged a claim for relief under § 17-4-122(a)(ii) of primary liability.

As referenced above, the Miles Trust has also alleged aiding and abetting liability of Secore & Waller based upon the same conduct upon which Plaintiffs have alleged primary liability.   Although no Wyoming case has addressed whether aiding and abetting liability exists

for violation of § 17-4-122(a)(ii), Wyoming Statute § 17-4-122(d) provides for the existence of aiding and abetting liability for employees of a seller who materially aid in a sale and of brokers or agents who materially aid in the sale. Other secondary actors, such as accountants and attorneys, are not specifically mentioned in the statutes. No case law interpretation of aider and abettor liability under the Wyoming Securities Act could be located.

In a criminal context, to convict a person for aiding and abetting it must be proved that a crime was committed by someone and that the aider and abettor associated himself with and participated in the accomplishment and success of the criminal venture. *Black v. State*, 46 P.3d 298, 301 (Wyo. 2002). If this standard is applied, the Miles Trust has adequately alleged aiding and abetting against Secore & Waller. The Miles Trust has alleged, and Secore & Waller admits, it was associated with the Provident fraudulent Ponzi scheme by virtue of its role in creating each of the entities, creating and drafting the private placement memoranda, and perfecting the exemption from registration under federal and state securities laws of each of the entities involved in the fraudulent Ponzi scheme. Thus, Secore & Waller associated itself with and participated in the accomplishment and success of Provident's fraudulent Ponzi scheme. In the recent civil case of *Oster v. Kirschner*, 905 NY2d 69 (2010), investors in an alleged Ponzi scheme brought an action against a law firm for aiding and abetting various common law claims and aiding and abetting violations of the New Jersey securities laws. The Court held that a plaintiff alleging an aiding and abetting fraud claim must allege the existence of the underlying fraud, actual knowledge, and substantial assistance. *Id.* at 72. Actual knowledge need only be generally pled. *Id.* Applying this standard, the Miles Trust has again adequately alleged aiding and abetting liability against Secore & Waller. The Miles Trust has alleged the underlying fraud,

has alleged that Secore & Waller knew of the material misrepresentations or omissions, and provided substantial assistance to the scheme.  In particular, the New York Court found that the allegations that the plaintiffs drafted private placement memoranda were sufficient to allege substantial assistance.  *Id*. at 72.  Giving effect to the broad remedial purposes of the Wyoming Securities Act, the Miles Trust has adequately alleged violation by Secore & Waller.

### Plaintiffs Have Adequately Alleged Common Law Fraud Against Secore & Waller

Secore & Waller asserts that Plaintiffs have failed to plead common law fraud with the required degree of particularity.  Rule 9(b) supplies the pleading particularity requirement for state of mind of Plaintiffs' common law fraud claim.  Plaintiffs have discussed at length above the particularity of Secore & Waller's role in Provident's fraudulent Ponzi scheme.  These pleading requirements have satisfied the heightened pleading requirements of the PSLRA and are sufficient to satisfy the Rule 9(b) pleading requirements of a common law fraud claim.  *In re Qwest Communications International, Inc. Securities Litigation*, 378 F.Supp.2d at 1153.  Under Rule 9(b), intent is required to be only generally alleged and Plaintiffs have alleged facts of general intent (Complaint, ¶¶ 121 through 125) alleging Secore & Waller's role in the Provident fraudulent Ponzi scheme.  Plaintiffs have adequately pled a common law fraud claim against Secore & Waller.

Secore & Waller further asserts that Plaintiffs have alleged their common law fraud claim in violation of the PSLRA.  The PSLRA, by its very terms, applies only to claims under the Securities and Exchange Act of 1934 and has never been applicable to Wyoming common law fraud claims.  The argument has no merit, is inapplicable, and irrelevant.

### Plaintiffs Have Adequately Alleged Negligence Against Secore & Waller

Secore & Waller's argument appears to be premised upon the assumption that Plaintiffs are suing for professional negligence or legal malpractice.  This is not the case.  Plaintiffs have brought a simple negligence claim against Secore & Waller for its conduct as alleged in the Complaint.  Secore & Waller relies heavily upon the case of *Estate of Drwenski*, 83 P.3d 457 (Wyo. 2004).  *Estate of Drwenski* is inapplicable to a determination of the adequacy of Plaintiffs' claim for negligence as it involved a professional negligence claim.  Plaintiffs' negligence claim is based upon the same set of facts as is its common law fraud claim, Wyoming Securities Act claim, and Section 10(b) claim.  The elements of a negligence claim under Wyoming law are: (1) the defendant owed the plaintiff a duty to conform to a specified standard of care; (2) the defendant breached the duty of care; (3) the defendant's breach of the duty of care proximately caused the injury to the plaintiff; and (4) the injury sustained by the plaintiff is compensable by money damages.  *Birt v. Wells Fargo Home Mortgage, Inc.*, 75 P.3d 640, 658 (Wyo. 2003). Plaintiffs have alleged all of these elements.  Plaintiffs have alleged that Secore & Waller owed a duty to those who would forseeably rely upon the private placement memoranda, including the Plaintiffs, to conduct a reasonable and prudent due diligence investigation into the accuracy and completeness of the information contained in the private placement memoranda, and to disclose material risks of the offering (Complaint, ¶ 122).  Plaintiffs have alleged that Secore & Waller breached such duties and how it breached such duties (Complaint, ¶¶ 123, 124, 143, 144, 145, and 146).  Plaintiffs have alleged proximate cause and injury (Complaint, ¶ 218).  Plaintiffs have thus adequately alleged all the elements of a negligence claim.

## CONCLUSION

The granting of a Motion to Dismiss is a harsh remedy which must be cautiously studied

not only to effectuate the spirit of the liberal rules of pleading, but to protect the interests of justice. *Phillips v. Bell*, 2010 W.L. 517629 (10th Cir. 2010). At this stage of the proceedings, and when ruling on a Motion to Dismiss, the Court must accept all of the allegations as true. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Circ. 2008). The Court may also consider documents referred to in the Complaint as well as public records, including pleadings filed in other federal courts and with the Securities and Exchange Commission. In this case, Secore & Waller formed 21 separate entities through which the Provident fraudulent Ponzi scheme was conducted. Secore & Waller drafted 21 private placement memoranda through which approximately one-half billion dollars was raised from 7,700 investors nationwide. Secore & Waller knew the nature and extent of the money being raised and the number of investors being solicited. Secore & Waller filed Form D's necessary to perfect purported exemptions from registration with the State of Wyoming, other States, and with the Securities and Exchange Commission. Secore & Waller was a material participant in the Provident fraudulent Ponzi scheme. Plaintiffs have adequately set forth claims for relief based upon acts and omissions of Secore & Waller. For such reason, Secore & Waller's Motion to Dismiss Pursuant to Fed.R.Civ.P. 8(a), 9(b), and 12(b)(6) should be denied.

Respectfully submitted this 1st day of October, 2010.

DAVIS & CANNON, LLP

By: _s/_____

J. Mark Stewart
422 West 26th Street
P.O. Box 43
Cheyenne, WY 82003
Telephone:      (307) 634-3210
Facsimile:      (307) 778-7118
mark@davisandcannonchey.com

Kim D. Cannon
DAVIS & CANNON, LLP
40 South Main
P.O. Box 728
Sheridan, WY 82801
Telephone:      (307) 672-7491
Facsimile:      (307) 672-8955
cannon@davisandcannon.com

John A Hutchings (*pro hac vice*)
DILL DILL CARR STONBRAKER
   & HUTCHINGS, P.C.
455 Sherman Street, Suite 300
Denver, CO 80203
Phone:          (303)777-3737
Facsimile:      (303) 777-3823
jhutchings@dillanddill.com

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing on the 1st day of October, 2010 to the following:

Jeffrey C Brinkerhoff
Mark W. Gifford
Gifford & Brinkerhoff
jeff@giffordbrinkerhoff.com
mark@giffordbrinkerhoff.com

K Lawson Pedigo
Miller Keffer Bullock & Pedigo
KLPedigo@mkp-law.net

David A. Baugh
Baugh Dalton Carlson & Ryan, LLC
dbaugh@baughdaltonlaw.com

Charles W. Gameros, Jr.
Hoge & Gameros
bgameros@legaltexas.com

Thomas N Long
Laura Jean Jackson
Long Reimer Winegard
tlong@lrw-law.com
ljackson@lrw-law.com

David F. DeFazio
DeFazio Law Office
david@defaziolaw.com

Jason Tangeman
Anthony Nicholas Goodrich & Tangeman
jtangeman@wyolegal.com

Rick L. Koehmstedt
Schwartz, Bon, Walker & Struder, LLC
rick@schwartzbon.com

Michael T. McConnell
Traci L. Van Pelt
Jared C. Lockwood
McConnell Fleischner Houghtaling &
Craigmile, LLC
mmcconnell@mfhc.com
tvanpelt@mfhc.com
jlockwood@mfhc.com

Thomas N. Fitzgibbon
Kimberly L. Thigpen
Pfeiffer Thigpen FitzGibbon & Ziontz LLP
tnf@ptflaw.com
klt@ptflaw.com

Amir Tadjedin
Markun Zusman & Compton LLP
atadjedin@mzclaw.com

**and sent either electronically or by mail to:**
Nathan Glossi
605 E. Myrtle Street
Fort Collins, CO 80524
Email: nglossi@hotmail.com

_s/_ _____

31